**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:

Praesum Healthcare Services, LLC,[1]          Case No. 25-19335-EPK
(Jointly Administered)

      Debtors.                               Chapter 11

_____/

## APPLICATION TO EMPLOY CHIEF RESTRUCTURING OFFICER

The following 28 chapter 11 Debtors, (1) Praesum Healthcare Services, LLC, (2) Evolve

Recovery Center, LLC, (3) Evolve Recovery Center at Millbury LLC, (4) Sunrise Detox

Alpharetta, LLC, (5) Sunrise Detox Brentwood, LLC, (6) Sunrise Detox Cherry Hill, LLC, (7)

Sunrise Detox Duluth, LLC, (8) Sunrise Detox III, LLC, (9) Sunrise Detox Millbury, LLC, (10)

Sunrise Detox Orlando, LLC, (11) Sunrise Detox Toms River, LLC, (12) The Counseling Center

---

[1] The 28 Debtors in these jointly-administered cases are: (1) Praesum Healthcare Services, LLC, Case No. 25-19335-EPK; (2) Evolve Recovery Center, LLC, Case No. 25-19336-EPK; (3) Evolve Recovery Center at Millbury LLC, Case No. 25-19340-EPK; (4) Sunrise  Detox Alpharetta, LLC, Case No. 25-19343-EPK; (5) Sunrise Detox Brentwood, LLC, Case No. 25-19346-EPK; (6) Sunrise Detox Cherry Hill, LLC, Case No. 25-19348-EPK; (7) Sunrise Detox Duluth, LLC, Case No. 25-19356-EPK; (8) Sunrise Detox III, LLC, Case No. 25-19359-EPK; (9) Sunrise Detox Millbury, LLC, Case No. 25-19362-EPK; (10) Sunrise Detox Orlando, LLC, Case No. 25-19363-EPK; (11) Sunrise Detox Toms River, LLC, Case No. 25-19365-EPK; (12) The Counseling Center at Cherry Hill, LLC, Case No. 25-19366-EPK; (13) The Counseling Center at Clark, LLC, Case No. 25-19367-EPK; (14) The Counseling Center at Duluth, LLC, Case No. 25-19368-EPK; (15) The Counseling Center at Fair Lawn, LLC, Case No. 25-19337-EPK; (16) The Counseling Center at Freehold, LLC, Case No. 25-19339-EPK; (17) The Counseling Center at Middlesex, LLC, Case No. 25-19341-EPK; (18) The Counseling Center at Robbinsville, LLC, Case No. 25-19342-EPK; (19) The Counseling Center at Roswell, LLC, Case No. 25-19344-EPK; (20) The Counseling Center at Roxbury, LLC, Case No. 25-19345-EPK; (21) The Counseling Center at Brunswicks, LLC, Case No. 25-19347-EPK; (22) The Counseling Center at Toms River, LLC, Case No. 25-19349-EPK; (23) The Counseling Center at West Caldwell, LLC, Case No. 25-19351-EPK; (24) The Counseling Center at Yorktown Heights, LLC, Case No. 25-19352-EPK; (25) Beacon Point Recovery Center LLC, Case No. 25-19354-EPK; (26) Sunrise Detoxification Center, LLC, Case No. 25-19355-EPK; (27) Sunrise Detox II, LLC, Case No. 25-19357-EPK; and (28) The Counseling Center at Millbury, LLC, Case No. 25-19358-EPK.

at Cherry Hill, LLC, (13) The Counseling Center at Clark, LLC, (14) The Counseling Center at Duluth, LLC, (15) The Counseling Center at Fair Lawn, LLC, (16) The Counseling Center at Freehold, LLC, (17) The Counseling Center at Middlesex, LLC, (18) The Counseling Center at Robbinsville, LLC, (19) The Counseling Center at Roswell, LLC, (20) The Counseling Center at Roxbury, LLC, (21) The Counseling Center at the Brunswicks, LLC, (22) The Counseling Center at Toms River, LLC, (23) The Counseling Center at West Caldwell, LLC, (24) The Counseling Center at Yorktown Heights, LLC, (25) Beacon Point Recovery Center LLC, (26) Sunrise Detoxification Center, LLC, (27) Sunrise Detox II, LLC, and (28) The Counseling Center at Millbury, LLC (the "**Debtors**"), pursuant to 11 U.S.C. §§ 105, 327(a) and 363(b), request the entry of an order, retroactive to August 21, 2025, authorizing their employment of Carol Fox and GlassRatner Advisory & Capital Group, LLC ("GlassRatner," and, with Carol Fox, the "**Firm**") as their chief restructuring officer ("**CRO**") and financial advisor ("**FA**").  In support, the Debtors states as follows:

## FACTS

1.      On August 14, 2025 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*.

2.      The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3.      Debtor Praesum Healthcare Services, LLC provides administrative services to each of the 27 other Debtors, which operate treatment facilities including detox facilities, residential facilities, and outpatient facilities.

4.      The 28 Debtors are affiliates.  Debtor Praesum Healthcare Services, LLC does not own or hold any of the 27 treatment provider Debtors.  Instead, Debtor Praesum Healthcare

Services, LLC is owned by non-debtor Praesum, LLC, which is itself owned by several individuals, including Timothy Doran and Morgan Poncy. Messrs. Doran and Poncy themselves own each of the 27 treatment provider Debtors. Mr. Doran is the manager of non-debtor Praesum, LLC. Non-debtor Praesum, LLC is the manager of Debtor Praesum Healthcare Services, LLC. And Debtor Praesum Healthcare Services, LLC is the manager of each of the 27 treatment provider Debtors.

5.      In the ordinary course of their businesses, each day, Debtor Praesum Healthcare Services, LLC sweeps the cash received by each of the 27 treatment provider Debtors into a bank account maintained by Debtor Praesum Healthcare Services, LLC. Debtor Praesum Healthcare Services, LLC pays the operating expenses of each of the 27 treatment provider Debtors from such bank account.

6.      On or about August 19, 2025, Debtor Praesum Healthcare Services, LLC terminated its chief financial officer, Curtis J. Berchtold.

7.      In light of this development, as well as the fact that there are 28 affiliated Debtors in great need of skilled management and financial advisory support, the Debtors believe it is in the best interests of their estates to retain the Firm as a CRO and FA.

8.      On or about August 21, 2025, the Debtors and the Firm entered into an engagement agreement (the "**Agreement**"), a copy of which is attached hereto as Exhibit A. The material terms of the Agreement include the following:[2]

      a.  The Firm will report to the current management of the Debtors (*i.e.*, Timothy Doran);

---

[2] Material terms of the Agreement are summarized herein for notice purposes only. To any extent the Agreement conflicts with this Motion, the Agreement shall control.

b.   The Firm's responsibilities are listed on Page 2 of the Agreement and include: attendance of Bankruptcy Court hearings; analysis; support in negotiations; an accounts receivable assessment; preparation of cash flow projections; assistance with preparation of monthly operating reports and bankruptcy schedules; treasury function management; human resources assistance; and assistance with formulation of a plan of reorganization;

c.   Payment by the Debtors of a $150,000 retainer;

d.   Hourly compensation at the rates listed on Page 3 of the Agreement, with Carol Fox's current hourly rate at $625; and

e.   Indemnification of the Firm by the Debtors as set forth on Pages 4-5 and 13-15 of the Agreement.

9.     In addition to the terms of the Agreement, the Firm and the Debtors have agreed that the Firm shall be compensated and reimbursed on an interim monthly basis.  Specifically, the Firm must still apply for, and seek Court approval, of all fees, costs, and expenses on a final basis. However, in interim, the Debtors and the Firm have agreed that, on a monthly basis, the Debtors and the Firm will file, and circulate to all parties receiving CM/ECF service, a listing of the time, expenses, and costs incurred by the Firm, and that the Debtors will be authorized to pay the same, on an interim basis, so long as objections to such filing have not been received within seven days of filing and service.

## RELIEF REQUESTED AND BASIS THEREFOR

10.     Through this Application, the Debtors seek to retain the Firm as CRO and FA pursuant to the terms of the Agreement and this Application.

11.     Carol Fox is a Senior Managing Director of GlassRatner and a subchapter V trustee. Ms. Fox has over three decades of experience providing accounting and advisory services, the majority of which include a concentration on forensic, investigative and bankruptcy services to debtors, creditors, bankruptcy trustees and examiners, creditors' committees, court appointed assignees, the Securities and Exchange Commission, the Department of Justice, law firms and financial institutions.

12.     The Debtors assert that, in the reasonable exercise of their business judgment, the retention of the Firm is necessary to achieve success—which will benefit creditors of their estates—in bankruptcy.

13.     To the best of the Debtors' knowledge, neither Ms. Fox nor GlassRatner hold or represent any interest adverse to the bankruptcy estates, the creditors of the Debtors, any other party in interest, the Debtors' respective attorneys, the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

14.     Attached to this Application as **Exhibit B** is the Declaration of Carol Fox (the "**Fox Declaration**"), which states that Ms. Fox is disinterested and does not represent or hold any interest adverse to the Debtors or to the estates.  The Fox Affidavit constitutes a verified statement as required under Federal Rule of Bankruptcy Procedure 2014.

15.     Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue an order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Section 363(b) of the Bankruptcy Code provides, in part, that a debtor in possession

"after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  Under applicable case law, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g.*, *In re Gulf States, Steel, Inc.*, 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Barbee*, 91 F.3d 389, 395 (3rd Cir. 1996); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *In re Johns Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to debtor's conduct.").

16.     The retention of interim corporate officers and other temporary employees is proper under section 363 of the Bankruptcy Code and courts in this district have approved the retention of temporary employees to provide restructuring services and interim management services under section 363 of the Bankruptcy Code. *See In re QSGI, Inc.*, Case No. 09-23658- EPK), ECF No. 79 (Bankr. S.D. Fla. August 6, 2009); *In re Tidewater Lodging Group, LLC*, Case No. 08-25694-RBR, ECF No. 111 (Bankr. S.D. Fla. February 6, 2009).

17.     Based on the foregoing, the Debtors submit that the engagement of the Firm is in the best interest of the estate and its creditors.

18.     Moreover, the Debtors submit that the $150,000 post-petition retainer as part of such engagement is appropriate.

19.     Although it contains multiple provisions regarding the disclosure and allowance of fees, "the Bankruptcy Code does not dictate a strict and rigid framework for professionals'

compensation…Rather, the provisions for employment and payment of a debtor's counsel in Chapter 11 are flexible and practical." *In re Jefferson Bus. Ctr. Associates*, 135 B.R. 676, 679 (Bankr. D. Col. 1992) (citing 11 U.S.C. §§ 327–331 and 503(b)(2) (footnote omitted). "A determination of whether, and in what amount, a retainer should be paid is best left to the parties and the discretion of the Court. Such a determination must be made on a case-by-case basis." *Jefferson Bus.*, 135 B.R. at 679. "In that process, the burden to establish the proposed terms and conditions of professional employment proposed in a bankruptcy case are reasonable is on the moving party." *Jefferson Bus.*, 135 B.R. at 679–80 (quotation omitted).

20.    In determining whether a chapter 11 post-petition retainer is justified, courts have examined a variety of factors. These include: "(1) the retainer's economic impact on the debtor's ongoing business operation; (2) the retainer's economic impact on the ability of the debtor to reorganize; (3) the amount and reasonableness of the retainer; (4) the reputation of debtor's counsel; and (5) the ability of debtor's counsel to disgorge such payments at the conclusion of the case should this Court determine that the fees paid to counsel are not justified." *Jefferson Bus.*, 135 B.R. at 680. While post-petition retainers are often approved in large bankruptcy cases, and to large law firms, courts have cautioned that there is "no reason to treat smaller law firms any differently…A smaller law firm can and often does face the same, or perhaps greater, burdens, costs, inconvenience, and financial strain, as does a larger firm if it is unable to receive a retainer. A small firm should not be treated any differently, as long as it meets all of the criteria referenced above." *Id.*

21.    The facts of these cases satisfy such analysis. First, to the extent that the post-petition retainer payment comes from the Debtors, such payment will comply with any approved budget as part of the cash collateral process. Accordingly, the retainer will not negatively impact

the Debtors' ongoing operations or ability to reorganize. The retainer is reasonable in light of the size and complexity of the Debtors' business and these 28 cases.  Ms. Fox and GlassRatner each have a strong reputation and familiarity with the requirements of professionals under the Bankruptcy Code and this Court's procedures.  Finally, the Firm will not apply any retainer amounts absent a Court order approving its fees and costs. As such, the Firm will have the ability to disgorge the retainer at the conclusion of the case should the Court determine fees to be unjustified. The Firm understands it must apply for compensation pursuant to the Bankruptcy Code.

22.     Finally, the Debtors submit that the interim monthly negative notice payment terms agreed to by the Debtors and the Firm—set forth in Paragraph 9 above—are appropriate given the nature of the Firm's employment, and the Debtors further note that the Court has approved similar monthly payment arrangements in the past. *See The Treatment Center of the Palm Beaches, LLC*, Case No. 18-14622-EPK, ECF No. 72 at ¶8.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order approving the Debtors' retention—retroactive to August 21, 2025—of GlassRatner Advisory & Capital Group, LLC and Carol Fox as the Debtors' chief restructuring officer and financial advisor on the terms set forth in the Agreement and in this Application.

Respectfully submitted,

**SHRAIBERG PAGE P.A.**
Proposed Counsel for the Debtors
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
bss@slp.law
ependergraft@slp.law

By:  /s/ *Bradley S. Shraiberg*
Bradley S. Shraiberg
Florida Bar. No. 121622
Eric Pendergraft
Florida Bar No. 91927

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service on August 26, 2025.

*/s/ Bradley S. Shraiberg*

# "EXHIBIT A"



1675 N. Military Trail, Suite 650
Boca Raton, FL 33486
Tel: (954) 859-5075
glassratner.com

August 21, 2025

Praesum Healthcare Services, LLC *et al.*[1]
Attn: Timothy Doran
2328 10th Avenue N., Suite 300-302
Lake Worth, FL 33461
tdoran@praesumhealthcare.com

Re: Chief Restructuring Officer Services for Praesum Healthcare Services, LLC *et al.* (the "Matter")

Dear Mr. Doran:

This engagement letter (this "Agreement") confirms our understanding that Praesum Healthcare Services, LLC as Debtor-in-Possession and each of its Debtor and non-Debtor subsidiaries and affiliates (together, the "Company"[1], or "Praesum", or "you") is engaging GlassRatner Advisory & Capital Group, LLC ("we," "us," "our" or "GlassRatner") as Chief Restructuring Officer ("CRO") in the Chapter 11 cases to be jointly administered under lead case #25-19335 pending in the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division (the "Bankruptcy Court").

Carol Fox, Senior Managing Director, will act as CRO, and will have overall engagement planning responsibilities, and will lead our day-to-day activities. Ms. Fox will report directly to Praesum's board of directors and will assign other professionals to the Matter as needed.

## Scope of Services

We understand that we are being retained to provide a CRO and related financial advisory services in connection with the Matter. Although matters such as this are dynamic, and the services provided may change as the Company provides additional information, it is our understanding that the current Scope of Services may include the following:

- Consult on all aspects of the Company's business activities and operations, including budgeting, cash management and financial management;

---

[1] The Company includes both Debtor and non-Debtor entities. The Debtors in these Chapter 11 cases as jointly administered include: Praesum Healthcare Services, LLC (lead case #25-19335), Evolve Recovery Center, LLC (#25-19336), Evolve Recovery Center at Millbury LLC (#25-19340), Sunrise Detox Alpharetta, LLC (#25-19343), Sunrise Detox Brentwood, LLC (#25-19346), Sunrise Detox Cherry Hill, LLC (#25-19348), Sunrise Detox Duluth, LLC (#25-19356), Sunrise Detox III, LLC (#25-19359), Sunrise Detox Millbury, LLC (#25-19362), Sunrise Detox Orlando, LLC (#25-19363), Sunrise Detox Toms River, LLC (#25-19365), The Counseling Center at Cherry Hill, LLC (#25-19366), The Counseling Center at Clark, LLC (#25-19367), The Counseling Center at Duluth, LLC (#25-19368), The Counseling Center at Fair Lawn, LLC (#25-19337), The Counseling Center at Freehold, LLC (#25-19339), The Counseling Center at Middlesex, LLC (#25-19341), The Counseling Center at Robbinsville, LLC (#25-19342), The Counseling Center at Roswell, LLC (#25-19344), The Counseling Center at Roxbury, LLC (#25-19345), The Counseling Center at the Brunswicks, LLC (#25-19347), The Counseling Center at Toms River, LLC (#25-19349), The Counseling Center at West Caldwell, LLC (#25-19351), The Counseling Center at Yorktown Heights, LLC (#25-19352), Beacon Point Recovery Center, LLC (#25-19354), Sunrise Detoxification Center, LLC (#25-19355), Sunrise Detox II, LLC (#25-19357), The Counseling Center at Millbury, LLC (#25-19358)



- Attend hearings, provide information and analyses for inclusion in Bankruptcy Court filings, and give testimony related thereto;
- Provide in-court testimony, as required;
- Support negotiations with the creditors and other constituents in the Bankruptcy Case;
- Perform a thorough assessment of the Company's Accounts Receivable ("A/R") to determine timing, amount, and status of collectability;
- Assist the Company with preparing, maintaining and monitoring 13-week cash flow projections and weekly variance analyses;
- Supervise GlassRatner's preparation of the Company's Monthly Operating Reports as required of a debtor in possession and other financial reporting required by the Office of the United States Trustee ("UST") on behalf of a debtor-in-possession;
- Assist the Company with the preparation of Bankruptcy Schedules and Statements of Financial Affairs;
- Review historical and projected financial information, including operating results, capital structure and funding mechanics for the Company;
- Manage the Company's treasury function including the opening and closing of bank accounts;
- Assist with communications and negotiations with the UST, Company's lenders, unsecured creditors, landlords, vendors, and other stakeholders;
- Work with the Company to hire and terminate employees as/if necessary;
- Review daily operating activity, purchases, and expenses;
- Evaluate liquidity options including restructuring, refinancing, reorganizing, and/or one or more sales of some or all of the Company's assets;
- Work with the Company and its professionals in the formulation of a Plan of Reorganization ("POR");
- Negotiate terms of debtor-in-possession financing, if necessary; and
- Pursue litigation and claims the Company's bankruptcy estates may have and acting as the ("Responsible Party") for all corporate decisions;

Our analyses will be based on documents produced to GlassRatner and independent research. We assume the Company has provided all relevant information they are aware of regarding the services and the Matter and GlassRatner is entitled to rely thereon.

If the Company requests that GlassRatner provide services in addition to those specified in the Scope of Services, e.g., investment banking services associated with a capital raise and/or a marketing and sale process under Section §363 of the U.S. Bankruptcy Code, litigation support consulting, expert witness testimony, forensic accounting, appraisal, etc., those services may be provided pursuant to a separate engagement agreement on mutually agreeable terms.



## Bankruptcy

Carol Fox's retention as CRO and GlassRatner's retention as financial advisor, on the terms set forth in this Agreement, will be subject to Bankruptcy Court approval.

## Compensation

We bill our professional time according to the number of hours worked at our standard hourly billing rate plus out-of-pocket costs incurred. Our firm's current standard hourly rates for persons who may work on this matter range from $295 to $895.  Our hourly rates for the individuals we anticipate using in this Matter are as follows:

| | |
|---|---|
| Carol Fox, CRO | $ 625 |
| Michael Thatcher, Senior Managing Director | $ 625 |
| Managing Directors | $ 495 - 595 |
| Other | $ 275 - 495 |

GlassRatner reviews its hourly rates each January 1, and the Company should anticipate an annual rate increase on January 1 and annually thereafter should the engagement still be active at that time and as approved by the Bankruptcy Court's orders. GlassRatner's compensation will be paid in accordance with any applicable federal and local statutes, rules and procedures and the Bankruptcy Court's orders.

## Retainer

In accordance with GlassRatner's standard policy, we will require a retainer of $150,000, which is due upon the execution of this Agreement and, to the extent of the services Company actually received by GlassRatner, will be applied to our final billing for the Company Matter ("Retainer"). This Retainer is not intended to be an estimate for the total cost of work that may be performed, nor have we provided a binding estimate or other form of cap. The Company recognizes that it is difficult to estimate the amount of time that this engagement may require. The time involved depends upon the extent and nature of available information. It also depends upon the developments that occur as our work progresses.  It is our intention to work closely with the Company to structure our work so that the Company is aware of the scope and direction of our work as it progresses. Should the time demand increase, we may require an addition to our Retainer.

## Limitations

GlassRatner is not a public accounting firm. While our work may involve analysis of accounting records, the engagement does not include an audit or review of existing records in accordance with generally accepted auditing standards or standards for review engagements. Accordingly, we will not be expressing an audit opinion on any of the financial or other data received in this engagement. GlassRatner is not a



law firm and will not provide legal or tax advice on any transaction or financing in conjunction with this assignment.

The Company acknowledges that all advice (written or oral) given by GlassRatner to the Company is intended solely for the benefit and use of the Company (limited to the shareholders of the Company, its board of directors, and its management). No advice (written or oral) of GlassRatner hereunder shall be used, reproduced, disseminated, quoted or referred to at any time, in any manner, or for any purpose, nor shall any public references to GlassRatner be made by the Company without the prior written consent of GlassRatner.

Please note that it is not our practice to retain working papers, notes, or data files that have been updated or superseded. If you wish us to follow a different retention practice, please indicate your specific request(s) in writing when returning a copy of this Agreement.

## Independent Contractor

The Company acknowledges and agrees that it is a sophisticated business enterprise, and that GlassRatner has been retained pursuant to this Agreement as an independent contractor and not as an agent or fiduciary to the Company or its shareholders.

## Indemnification and Limitation of Liability

The Company agrees (i) to the indemnification and other agreements set forth on **Schedule A** hereto, which are hereby incorporated by reference, or (ii) to indemnify the Indemnified Parties (as defined on Schedule A) to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Company's bylaws, its certificate of incorporation, or otherwise, whichever is greater. The Company further agrees that no reduction or termination in any of the benefits provided under any such indemnities described in subsection (ii) of the preceding section shall affect the benefits provided to Indemnified Parties.

THE COMPANY ALSO AGREES THAT NO INDEMNIFIED PARTY SHALL HAVE ANY LIABILITY (WHETHER DIRECT OR INDIRECT, IN CONTRACT OR TORT OR OTHERWISE) TO THE COMPANY FOR OR IN CONNECTION WITH THE ENGAGEMENT OF GLASSRATNER, IN EXCESS OF THE FEES PAID TO GLASSRATNER HEREUNDER, INCLUDING ANY REASONABLE ATTORNEYS' FEES AND COURT COSTS, EXCEPT TO THE EXTENT THAT ANY SUCH LIABILITY FOR LOSSES, CLAIMS, DAMAGES, LIABILITIES OR EXPENSES IS FINALLY JUDICIALLY DETERMINED OR DETERMINED PURSUANT TO A FINAL, BINDING DECISION OF AN ARBITRATOR IN ACCORDANCE WITH THE DISPUTE RESOLUTION PROVISIONS OF THIS AGREEMENT TO HAVE RESULTED PRIMARILY FROM SUCH INDEMNIFIED PARTY'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT.



## Insurance

During the term of this Agreement and for the two year period following its termination, the Company shall specifically include and cover GlassRatner's employees and agents serving as directors and officers (such as a CRO) of the Company or its affiliates (collectively, the "Covered Parties") from time to time with direct coverage under the Company's existing director and officer liability insurance policies and any equivalently placed employee liability insurance policies (collectively, the "D&O Policy"). Prior to GlassRatner personnel or agents accepting any director or officer position, the Company shall provide evidence of said coverage in place and evidence of payment of premiums associated therewith, as well as any board resolutions and documents that GlassRatner may reasonably request evidencing the appointment and coverage of the Covered Parties. The D&O Policy must be at a coverage level satisfactory to GlassRatner in its sole discretion. The cost of any additional coverage shall be paid directly by the Company.

Notwithstanding anything to the contrary, the Company's indemnification, contribution, and advancement obligations in this Agreement shall be primary to (and without allocation against) any similar indemnification, contribution, and advancement obligations of GlassRatner, its affiliates, and its insurers to the Covered Parties (which shall be secondary), and the Company's insurance coverage for the Covered Parties under the D&O Policy shall be specifically primary to (and without allocation against) any other valid and collectible insurance coverage that may apply to the Covered Parties (whether provided by GlassRatner or otherwise).

## Termination

This Agreement may be terminated immediately by GlassRatner or the Company, in their sole discretion, for any reason whatsoever and without prior notice. Upon termination of this Agreement, GlassRatner shall be entitled to all fees and expenses incurred pursuant to this Agreement prior to notice of termination, subject to any dispute concerning the fees due and the dispute provision included in this Agreement. The termination of this Agreement shall not relieve the Company or GlassRatner from the provisions of this Agreement relating to indemnification, limitation of liability, settlement, the payment of the fees, costs and expenses payable hereunder whether or not accrued prior thereto, confidentiality, the status of GlassRatner as an independent contractor, the limitation on the use, reliance on, and disclosure of GlassRatner's advice, governing law and dispute resolution.

## Confidentiality

GlassRatner agrees not to disclose or permit the disclosure of any of the terms of this Agreement or any information relating to the Matter, provided that such disclosure may be made (a) to any person who is an officer, director, member, manager, advisors, or employee of GlassRatner or its affiliates ("Representatives") solely for their use in the performance of the services hereunder and on a need-to-know basis, (b) with the prior written consent of the Company, or (c) pursuant to law, regulation, subpoena,



order issued by a court, arbitrator or governmental body, agency or official, or other legal process. In the event that GlassRatner shall receive a request to disclose any of the terms of this Agreement pursuant to section (c) of the preceding sentence, GlassRatner shall, to the extent legally permissible, (i) promptly notify the Company, (ii) consult with the Company (at the Company's expense) on the advisability of taking steps to resist or narrow such request and (iii) if disclosure is required or deemed advisable, reasonably cooperate with the Company, at the Company's sole cost and expense, in any attempt Company may make to obtain an order or other assurance that confidential treatment will be accorded those terms of this Agreement that are disclosed. The confidentiality restrictions contained herein shall continue for a period of two (2) years from the date hereof and shall not apply to information that: (i) at the time of disclosure by the Company to GlassRatner or its Representatives is, or thereafter becomes, generally available to the public, other than as a direct result of a breach by GlassRatner of its obligations under this Agreement; (ii) prior to or at the time of disclosure by the Company to GlassRatner or its Representatives was already in the possession of GlassRatner or any of its Representatives; (iii) at the time of disclosure is, or thereafter becomes, available to GlassRatner or its Representatives from a third-party source, provided that, to GlassRatner's or its Representatives' knowledge, such third party is not and was not prohibited from disclosing such Confidential Information to GlassRatner; or (iv) is or was independently developed by GlassRatner or its Representatives without reference to the confidential information provided to GlassRatner by the Company.

## Integration; Severability

This Agreement contains the entire agreement and understanding between GlassRatner and the Company concerning the Matter. This Agreement supersedes and replaces all prior negotiations, estimates, proposed agreements, and/or agreements (oral and written) concerning GlassRatner's services for the Company in conjunction with the Matter. If any portion of this Agreement shall be held or made unenforceable or invalid by a statute, rule, regulation, decision of a tribunal or otherwise, the remainder of this Agreement shall not be affected thereby and shall remain in full force and effect, and, to the fullest extent, the provisions of this Agreement shall be severable.

## Governing Law; Dispute Resolution

The parties agree that this Agreement shall be governed by and construed in accordance with the laws of the State of Florida without regard to choice of law or principles thereof. The parties agree that any disputes arising out of this Agreement shall be submitted to final, binding arbitration conducted in Palm Beach County, Florida under the Expedited Arbitration Procedures and Rules of the Judicial Arbitration and Mediation Services Inc. ("JAMS") before a single, neutral arbitrator who shall follow Florida law and the Federal Rules of Evidence and have no authority to award punitive damages. Either party may enforce a final arbitration award in any court of competent jurisdiction in Palm Beach County, Florida including an award of costs, fees and expenses incurred in enforcing the award. The parties shall keep confidential and not disclose the fact that there is a dispute between the parties, the details of the dispute, the fact of the

 GlassRatner

arbitration and all details relating to the proceeding. Notwithstanding the foregoing, either party shall be entitled to seek injunctive relief in the state or federal courts of the State of Florida upon a showing that a material portion of this Agreement was violated, and emergency relief is necessary to avoid irreparable harm. The prevailing party in any dispute arising hereunder shall be entitled to recover from the other all fees and costs incurred, including legal fees and costs and the costs of experts, in any proceedings, including, but not limited to arbitration, litigation, bankruptcy, and in any appellate proceedings as well. Notwithstanding the foregoing, in the event a Bankruptcy Case is filed, disputes shall be submitted to the Bankruptcy Court during the pendency of any such case.

## GlassRatner Employee Placement Fee

If, at any time during the period that commences on the date of this Agreement and terminates on the date that is six (6) months from the date of the termination or expiration of this Agreement (the "Solicitation Period"), the Company hires a GlassRatner employee who works on this engagement during the Solicitation Period, the Company agrees to pay a placement fee to GlassRatner in the amount of twenty percent (20%) of the employee's estimated total first year's compensation, including estimated commissions and bonuses, and any signing bonus. Such fee is not subject to reduction even if the employee's employment terminates. The Company will be obligated to pay such fee within thirty (30) days of the first day of the employee's employment by the Company, unless otherwise mutually agreed to by the Company and GlassRatner.

## Contact Information

All correspondence should be directed to:

**Carol Fox, Senior Managing Director**
GlassRatner Advisory & Capital Group, LLC
1675 N. Military Trail, Suite 650
Boca Raton, FL 33486
Phone: (954) 859-5075
Email: cfox@glassratner.com

## Conclusion

If the arrangements described in this Agreement are acceptable to the Company, and the services summarized above are in accordance with the understanding of the Company, please sign and return a copy of this Agreement along with the Retainer. This Agreement may be executed in counterparts. Signatures sent by fax or as pdf shall be treated as originals.

*[Signature Page Follows]*



1675 N. Military Trail, Suite 650
Boca Raton, FL 33486
Tel: (954) 859-5075
glassratner.com

## GlassRatner

We look forward to working with you on this Matter.

Yours very truly,

GlassRatner Advisory & Capital Group, LLC

Carol Fox
Senior Managing Director

Accepted and Agreed:

Praesum Healthcare Services, LLC

**Name:** _DELTON WHITE II_
**Title:** _EVP_

**Date:** _08.21.25_

Evolve Recovery Center, LLC

**Name:**
**Title:**

**Date:**

---

¹ The Company includes both Debtor and non-Debtor entities. The Debtors in these Chapter 11 cases as jointly administered include: Praesum Healthcare Services, LLC (lead case #25-19335), Evolve Recovery Center, LLC (#25-19336), Evolve Recovery Center at Millbury LLC (#25-19340), Sunrise Detox Alpharetta, LLC (#25-19343), Sunrise Detox Brentwood, LLC (#25-19346), Sunrise Detox Cherry Hill, LLC (#25-19348), Sunrise Detox Duluth, LLC (#25-19356), Sunrise Detox III, LLC (#25-19359), Sunrise Detox Millbury, LLC (#25-19362), Sunrise Detox Orlando, LLC (#25-19363), Sunrise Detox Toms River, LLC (#25-19365), The Counseling Center at Cherry Hill, LLC (#25-19366), The Counseling Center at Clark, LLC (#25-19367), The Counseling Center at Duluth, LLC (#25-19368), The Counseling Center at Fair Lawn, LLC (#25-19337), The Counseling Center at Freehold, LLC (#25-19339), The Counseling Center at Middlesex, LLC (#25-19341), The Counseling Center at Robbinsville, LLC (#25-19342), The Counseling Center at Roswell, LLC (#25-19344), The Counseling Center at Roxbury, LLC (#25-19345), The Counseling Center at the Brunswicks, LLC (#25-19347), The Counseling Center at Toms River, LLC (#25-19349), The Counseling Center at West Caldwell, LLC (#25-19351), The Counseling Center at Yorktown Heights, LLC (#25-19352), Beacon Point Recovery Center, LLC (#25-19354), Sunrise Detoxification Center, LLC (#25-19355), Sunrise Detox II, LLC (#25-19357), The Counseling Center at Millbury, LLC (#25-19358)

**GR** GlassRatner

Evolve Recovery Center at Millbury, LLC

_____        _____
**Name:**                                        **Date:**
**Title:**

Sunrise Detox Alpharetta, LLC

_____        _____
**Name:**                                        **Date:**
**Title:**

Sunrise Detox Brentwood, LLC

_____        _____
**Name:**                                        **Date:**
**Title:**

Sunrise Detox Cherry Hill, LLC

_____        _____
**Name:**                                        **Date:**
**Title:**

Sunrise Detox Duluth, LLC

_____        _____
**Name:**                                        **Date:**
**Title:**

Sunrise Detox III, LLC

_____        _____
**Name:**                                        **Date:**
**Title:**

Sunrise Detox Millbury, LLC

_____        _____
**Name:**                                        **Date:**
**Title:**

**GR** GlassRatner

Sunrise Detox Orlando, LLC

_____
Name:                                                      Date: _____
Title:

Sunrise Detox Toms River, LLC

_____
Name:                                                      Date: _____
Title:

The Counseling Center at Cherry Hill, LLC

_____
Name:                                                      Date: _____
Title:

The Counseling Center at Clark, LLC

_____
Name:                                                      Date: _____
Title:

The Counseling Center at Duluth, LLC

_____
Name:                                                      Date: _____
Title:

The Counseling Center at Fair Lawn, LLC

_____
Name:                                                      Date: _____
Title:

The Counseling Center at Freehold, LLC

_____
Name:                                                      Date: _____
Title:

# GR GlassRatner

The Counseling Center at Middlesex, LLC

Name:
Title:

Date:

The Counseling Center at Robbinsville, LLC

Name:
Title:

Date:

The Counseling Center at Roswell, LLC

Name:
Title:

Date:

The Counseling Center at Roxbury, LLC

Name:
Title:

Date:

The Counseling Center at the Brunswicks, LLC

Name:
Title:

Date:

The Counseling Center at Toms River, LLC

Name:
Title:

Date:

The Counseling Center at West Caldwell, LLC

Name:
Title:

Date:

**GlassRatner**

The Counseling Center at Yorktown Heights, LLC

Name: _____    Date: _____
Title:

Beacon Point Recovery Center, LLC

Name: _____    Date: _____
Title:

Sunrise Detoxification Center, LLC

Name: _____    Date: _____
Title:

Sunrise Detox II, LLC

Name: _____    Date: _____
Title:

The Counseling Center at Millbury, LLC

Name: _____    Date: _____
Title:

Praesum Health Allegheny, LLC

Name: _____    Date: _____
Title:

Toms River Health, LLC

Name: _____    Date: _____
Title:



### Schedule A[1]

The Company agrees to indemnify and hold harmless GlassRatner and its affiliates (as defined in Rule 405 under the Securities Act of 1933, as amended) and their respective directors, officers, members, managers, employees, agents and controlling persons (GlassRatner and each such person being an "Indemnified Party") from and against all losses, claims, damages and liabilities (or actions, including shareholder actions, in respect thereof), joint or several, to which such Indemnified Party may become subject under any applicable federal or state law, or otherwise, which are related to or result from the performance by GlassRatner of the services contemplated by, or the engagement of GlassRatner pursuant to, this Agreement and will promptly reimburse any Indemnified Party for all reasonable expenses (including reasonable counsel fees and expenses) as they are incurred in connection with the investigation of, preparation for or defense arising from any threatened or pending claim, whether or not such Indemnified Party is a party and whether or not such claim, action or proceeding is initiated or brought by the Company. The Company will not be liable to any Indemnified Party under the foregoing indemnification and reimbursement provisions to the extent that any loss, claim, damage or liability is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted primarily from GlassRatner's willful misconduct or gross negligence. The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its security holders or creditors related to or arising out of the engagement of GlassRatner pursuant to, or the performance by GlassRatner of the services contemplated by, this Agreement except to the extent that any loss, claim, damage or liability is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted primarily from GlassRatner's willful misconduct or gross negligence.

Promptly after receipt by an Indemnified Party of notice of any intention or threat to commence an action, suit or proceeding or notice of the commencement of any action, suit or proceeding, such Indemnified Party will, if a claim in respect thereof is to be made against the Company pursuant hereto, notify the Company in writing of the same. In case any such action is brought against any Indemnified Party and such Indemnified Party notifies the Company of the commencement thereof, the Company may elect to assume the defense thereof, with counsel reasonably satisfactory to such Indemnified Party, and an Indemnified Party may employ counsel to participate in the defense of any such action provided, that the employment of such counsel shall be at the Indemnified Party's own expense, unless (i) the employment of such counsel has been authorized in writing by the Company, (ii) the Indemnified Party has reasonably concluded (based upon advice of counsel to the Indemnified Party) that there may be legal defenses available to it or other Indemnified Parties that are different from or in addition to those available to the Company, or that a conflict or potential conflict exists (based upon advice of counsel to the Indemnified Party) between the Indemnified Party and the Company that makes it impossible or inadvisable for counsel to the Indemnifying Party to conduct the defense of both the Company and the Indemnified Party (in which case the Company will not have the right to direct the defense of such action on behalf of the Indemnified Party), or (iii) the Company has not in fact employed counsel reasonably satisfactory to the Indemnified Party to assume the defense of such action within a reasonable time after receiving notice of the action, suit or proceeding, in each of which cases the reasonable fees, disbursements and other charges of such counsel will be at the expense of the Company; provided, further, that in no event shall the Company be

---

[1] Capitalized terms used but not defined in this Schedule A shall have the meanings ascribed to them in the Agreement to which this is attached.



required to pay fees and expenses for more than one firm of attorneys (in addition to one local counsel) representing Indemnified Parties unless the defense of one Indemnified Party is unique or separate from that of another Indemnified Party subject to the same claim or action. Any failure or delay by an Indemnified Party to give the notice referred to in this paragraph shall not affect such Indemnified Party's right to be indemnified hereunder, except to the extent that such failure or delay causes actual harm to the Company, or prejudices its ability to defend such action, suit or proceeding on behalf of such Indemnified Party.

If the indemnification provided for in this Agreement is for any reason held unenforceable by or unavailable to an Indemnified Party, the Company agrees to contribute to the losses, claims, damages and liabilities for which such indemnification is held unenforceable or unavailable (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and GlassRatner, on the other hand, of any Property Sale as contemplated whether or not such Property Sale is consummated or, (ii) if (but only if) the allocation provided for in clause (i) is for any reason unenforceable or unavailable, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of the Company, on the one hand, and GlassRatner, on the other hand, as well as any other relevant equitable considerations. The Company agrees that for the purposes of this paragraph the relative benefits to the Company and GlassRatner of any Property Sale as contemplated shall be deemed to be in the same proportion that the total value received or contemplated to be received by the Company or its shareholders, as the case may be, as a result of or in connection with such Property Sale bears to the fees paid or to be paid to GlassRatner under this Agreement. Notwithstanding the foregoing, the Company expressly agrees that GlassRatner shall not be required to contribute any amount in excess of the amount by which fees paid GlassRatner hereunder (excluding reimbursable expenses), exceeds the amount of any damages which GlassRatner has otherwise been required to pay.

The Company will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action or proceeding in respect of which indemnification or contribution could be sought under the provisions of this Agreement, whether or not any Indemnified Party is an actual or potential party to such claim, action or proceeding, without GlassRatner's prior written consent (which consent shall not be unreasonably withheld in the case of any claim, action or proceeding involving only the payment of money damages), unless such settlement, compromise or consent (i) includes an unconditional release of each Indemnified Party from all liability in any way related to or arising out of such claim, action or proceeding and (ii) does not impose any actual or potential liability upon any Indemnified Party and does not contain any factual or legal admission by or with respect to any Indemnified Party or any adverse statement with respect to the character, professionalism, due care, loyalty, expertise or reputation of any Indemnified Party or any action or inaction by any Indemnified Party. The Company's recourse with respect to any liability or obligation of GlassRatner hereunder shall be limited to the assets of GlassRatner, and the Company shall have no recourse against, and expressly waives its right to bring any claim against, any other Indemnified Party or any of their assets.

In the event that an Indemnified Party is requested, authorized by the Company, or required to appear as a witness in any action brought by or on behalf of or against the Company in which such Indemnified Party is not named as a defendant, the Company agrees to promptly reimburse GlassRatner on a monthly basis for all expenses incurred by it in connection with such Indemnified Party's appearing and preparing to appear as such a witness, including, without limitation, the reasonable fees and disbursements of its legal counsel. In addition to any reimbursed fees, expenses or costs outlined hereunder, GlassRatner shall also



receive from the Company cash compensation of $2,000.00 per person, per day, plus reasonable out-of-pocket expenses and costs should GlassRatner be required to provide testimony in any formal or informal proceeding regarding the Company.

If multiple claims are brought, at least one for which indemnification is permitted under applicable law and provided for under this Agreement, the Company agrees that any judgment or arbitration award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for, except to the extent the judgment or arbitration award expressly states that it, or any portion thereof, is based solely on a claim as to which indemnification is not available.

# "EXHIBIT B"

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
www.flsb.uscourts.gov

In re:

Praesum Healthcare Services, LLC,[1]                    Case No. 25-19335-EPK
                                                        (Jointly Administered)
                                                        Chapter 11

              Debtors.
_____/

## DECLARATION OF CAROL FOX

**Under 28 U.S.C. § 1746, I, Carol Fox declare as follows:**

    1.     I am a Senior Managing Director with GlassRatner Advisory & Capital Group, LLC

("GlassRatner"), a professional services firm engaged in the business of providing interim

management, financial advisory and related consulting services.  I am duly authorized to execute

this declaration on behalf of GlassRatner.

---

[1] The 28 Debtors in these jointly administered cases are: (1) Praesum Healthcare Services, LLC, Case No. 25-19335-EPK; (2) Evolve Recovery Center, LLC, Case No. 25-19336-EPK; (3) Evolve Recovery Center at Millbury LLC, Case No. 25-19340-EPK; (4) Sunrise Detox Alpharetta, LLC, Case No. 25-19343-EPK; (5) Sunrise Detox Brentwood, LLC, Case No. 25-19346-EPK; (6) Sunrise Detox Cherry Hill, LLC, Case No. 25-19348-EPK; (7) Sunrise Detox Duluth, LLC, Case No. 25-19356-EPK; (8) Sunrise Detox III, LLC, Case No. 25-19359-EPK; (9) Sunrise Detox Millbury, LLC, Case No. 25-19362-EPK; (10) Sunrise Detox Orlando, LLC, Case No. 25-19363- EPK; (11) Sunrise Detox Toms River, LLC, Case No. 25-19365-EPK; (12) The Counseling Center at Cherry Hill, LLC, Case No. 25-19366-EPK; (13) The Counseling Center at Clark, LLC, Case No. 25-19367-EPK; (14) The Counseling Center at Duluth, LLC, Case No. 25-19368-EPK; (15) The Counseling Center at Fair Lawn, LLC, Case No. 25-19337-EPK; (16) The Counseling Center at Freehold, LLC, Case No. 25-19339-EPK; (17) The Counseling Center at Middlesex, LLC, Case No. 25-19341-EPK; (18) The Counseling Center at Robbinsville, LLC, Case No. 25-19342-EPK; (19) The Counseling Center at Roswell, LLC, Case No. 25-19344-EPK; (20) The Counseling Center at Roxbury, LLC, Case No. 25-19345-EPK; (21) The Counseling Center at Brunswicks, LLC, Case No. 25-19347-EPK; (22) The Counseling Center at Toms River, LLC, Case No. 25- 19349-EPK; (23) The Counseling Center at West Caldwell, LLC, Case No. 25-19351-EPK; (24) The Counseling Center at Yorktown Heights, LLC, Case No. 25-19352-EPK; (25) Beacon Point Recovery Center LLC, Case No. 25-19354-EPK; (26) Sunrise Detoxification Center, LLC, Case No. 25-19355-EPK; (27) Sunrise Detox II, LLC, Case No. 25-19357-EPK; and (28) The Counseling Center at Millbury, LLC, Case No. 25-19358-EPK.

4916-4208-7266, v. 1

2.      I submit this declaration in connection with the *Application to Employ Chief Restructuring Officer* (the "Application") filed by the debtors and debtors in possession (the "Debtors") in the above-captioned jointly administered cases (the "Chapter 11 Cases").

3.      Unless otherwise stated, the facts set forth below are based upon my personal knowledge or discussions with other professionals of GlassRatner, and records of GlassRatner reviewed by me or my colleagues acting under my supervision and direction.  I will supplement this declaration if additional information related to the matters addressed in this declaration becomes available during the pendency of the Chapter 11 Cases.

## Qualifications of GlassRatner

4.      I am a CPA with over 35 years of private and public accounting experience.  For over two decades, my career has concentrated on providing bankruptcy, restructuring, and forensic accounting services to a wide range of industries.  I currently serve as liquidating trustee for jointly administered cases pending in the Eastern District of Kentucky.  Additionally, I currently serve as a case-by-case Subchapter V trustee in the Southern District of Florida.

5.      GlassRatner maintains an office at 1675 N. Military Trail, Suite 650 Boca Raton, FL 33486.

6.      The Debtors selected GlassRatner due to their extensive experience and knowledge in providing restructuring and turnaround advisory services, forensic accounting, litigation support services, and other types of financial consulting services.

7.      In preparing to represent the Debtors, GlassRatner has become familiar with the Debtors' bankruptcy case filings and general information regarding many of the potential issues that may arise in the context of the Debtors' operating and reporting duties.  I believe that GlassRatner is both qualified and able to represent the Debtors as debtors in possession in an efficient and timely manner.

## Services to be Provided

8.      Subject to further order of the Court, [2] the Debtors have requested the retention and employment of GlassRatner to render professional services to it in connection with these Chapter 11 Cases.

9.      The terms of GlassRatner's engagement as the Debtors' chief restructuring officer and financial advisor are accurately described in the Engagement Letter, a true and correct copy of which is attached as **Exhibit A** to the Application.

10.      Subject to this Court's approval of the Application, GlassRatner is willing to serve as the Debtors' chief restructuring officer and financial advisor and perform the services as described in the Engagement Letter.

## Professional Compensation

11.      GlassRatner has agreed to perform services on an hourly-fee basis at its customary hourly rates for cases of the size and complexity as these Chapter 11 Cases.  GlassRatner's hourly rates range from $625 for senior managing directors with the highest billing rates to $240 for associates with the lowest billing rates.  GlassRatner's rates are subject to periodic adjustment (normally at year end) to reflect economic, experience, and other similar factors.

12.      GlassRatner's hourly rates for the professionals who will most likely be working on these Chapter 11 Cases are:

| | |
|---|---|
| Carol Fox, Chief Restructuring Officer | $625 per hour |
| Michael Thatcher, Senior Managing Director | $625 per hour |
| Managing Directors | $495–595 per hour |
| Other staff | $240–495 per hour |

---

[2] The United States Bankruptcy Court for the Southern District of Florida – West Palm Beach Division (the "Court").

4916-4208-7266, v. 1

13.     While GlassRatner's compensation and expense/cost reimbursement will be subject to final approval by the Court, the Debtors will seek interim authority to pay and reimburse GlassRatner on a monthly basis following notice and an opportunity for parties to object.

14.     Subject to the Court's final approval, and with the Debtors seeking interim monthly authority as set forth above, the Debtors have agreed to the reimbursement of GlassRatner for all out-of-pocket expenses and costs incurred in connection with GlassRatner's services to the Debtors.  GlassRatner will charge for reasonable actual and necessary expenses in a manner and at rates consistent with charges made generally to GlassRatner's other clients and consistent with the applicable Local Rules.

15.     The Debtors will fund $150,000 as an advanced fee deposit with the consent of its secured lender subject to finalization of the cash collateral and debtor in possession financing orders.  The Debtors' payment of this sum shall be subject to disgorgement pending the Court's approval of this Application.

16.     In accordance with section 504 of the Bankruptcy Code and Bankruptcy Rule 2016, GlassRatner has not entered into any agreement to share, nor will it share compensation received for services rendered in connection with this case.  GlassRatner will endeavor to perform its services at a reasonable cost.

**<u>Disinterestedness of GlassRatner</u>**

17.     As it relates to personal associations with the Debtors, their creditors, or any other party-in-interest or its respective attorneys and accountants, the members of GlassRatner (i) do not have any connection with the Debtors, their creditors, or any other party-in-interest or its respective attorneys and accountants, (ii) do not have any connection with the United States Trustee or any person employed in the Office of the United States Trustee; (iii) are "disinterested persons" as that

term is defined in section 101(14) of the Bankruptcy Code, and (iv) do not hold or represent any interest adverse to the Debtors' estates.

18. From September 14, 2020 to June 27, 2025, GlassRatner conducted business as "GlassRatner Advisory & Capital Group LLC d/b/a B. Riley Advisory Services." During that time GlassRatner was an indirect wholly owned subsidiary of B. Riley Financial, Inc. ("BRF"), a publicly traded, diversified financial services company. B. Riley provided services through several consolidated subsidiaries. Accordingly, during the time that GlassRatner was owned by BRF, GlassRatner's conflict check procedures included searches for conflicts and relationships across all the divisions and affiliates of BRF. The legal entity that was retained in all chapter 11 cases was then, and continues to be, GlassRatner Advisory & Capital Group, LLC.

19. On June 27, 2025, GlassRatner was acquired by investment funds controlled by TorQuest Partners ("TorQuest"). GlassRatner is no longer doing business as B. Riley Advisory Services or affiliated with B. Riley Financial, Inc.

20. TorQuest is a sponsor of multiple private equity funds, each of which makes investments in separate operating companies that are neither connected to nor affiliates of any other portfolio company. Management resides in each portfolio company and TorQuest's role is that of an investor. This is similar to a number of other bankruptcy financial consulting firms. TorQuest is not involved in the day-to- day operations of its portfolio companies.

21. GlassRatner is a separate legal entity from TorQuest and TorQuest's other subsidiaries. TorQuest and its subsidiaries, including GlassRatner, observe appropriate legal formalities as separate entities. TorQuest and its subsidiaries adhere to customary confidentiality obligations with respect to client information. GlassRatner personnel do not have access to the

files of other TorQuest business lines, nor do other business lines have access to GlassRatner's files.

22.     GlassRatner and its affiliates provide services to a wide range of institutions and individuals and may in the past have had, and may currently or in the future have, relationships with parties that may have relationships with the Debtors.  In the ordinary course of business, investment funds affiliated with TorQuest and certain of GlassRatner's and its affiliates' employees, as well as investment funds in which such employees may have financial interests, but over whose investment decisions such employees have no input or control, may acquire, hold, or sell long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, the Debtors or other parties that may have an interest in these Chapter 11 Cases or have other relationships with such parties.  With respect to any such securities, financial instruments and/or investments, all rights in respect of such securities, financial instruments, and investments, including any voting rights, will be exercised by the holder of the rights, in its sole discretion. Moreover, the GlassRatner employees who are working on these Chapter 11 Cases are subject to compliance mechanisms and policies and procedures designed to prevent confidential, non-public information from being improperly shared.

23.     In the ordinary course of business, GlassRatner and its affiliates from time to time discuss issues concerning stressed and distressed companies with creditors and prospective creditors that are clients of the firm, or that otherwise contact GlassRatner or its affiliates, or that are referred to the firm in light of GlassRatner's or its affiliates' reputation for advising such companies and/or relevant industry expertise.  At the time of those contacts, it is not known whether any particular company will actually file for bankruptcy, or if any of these creditors and/or

potential creditors will serve on any future committee, or even be a creditor of the relevant estate in the event of a future bankruptcy. GlassRatner may communicate with, and when appropriate or requested, send materials to one, or more, of the 20 largest unsecured creditors identified by a debtor and who are therefore potential members of a creditors' committee if GlassRatner and its professionals either know, work with, are contacted by, or are otherwise referred to the relevant creditor. In some circumstances, GlassRatner and its professionals may contact potential committee members with whom we are not previously familiar.

24.    GlassRatner and its affiliates' personnel may have business associations with certain creditors of the Debtors or counsel, or other professionals involved in these Chapter 11 Cases on matters unrelated to these Chapter 11 Cases. In addition, in the ordinary course of its business, GlassRatner and its affiliates may engage counsel or other professionals in unrelated matters who now advise, or in the future may advise, creditors or other interested parties in these Chapter 11 Cases, or who have advised or currently advise GlassRatner and its affiliates in matters unrelated to these Chapter 11 Cases.

25.    To the best of my knowledge, on matters unrelated to the Debtors, GlassRatner and/or its subsidiaries and affiliates may have provided due diligence, asset appraisal, consultation, enterprise valuation, and/or field exam services in the ordinary course of business to many lenders, investors, and other market participants, some of whom may be creditors, equity security holders, and other parties in interest in these Chapter 11 Cases.

26.    In connection with our proposed retention by the Debtors in these Chapter 11 Cases, we undertook to determine whether we have any conflicts or other relationships that might cause GlassRatner to not be disinterested or to hold or represent an interest adverse to the Debtors.

4916-4208-7266, v. 1

27.     To determine GlassRatner's relationship with parties in interest in these Chapter 11 Cases, GlassRatner prepared a list comprised of: a) the Debtors, b) counsel representing the Debtors, c) all creditors, d) counsel representing any creditors and e) all other interested parties identified on the list of creditors maintained by the Court (individually, an "Interested Party" and collectively, the "Interested Parties").  Given the change in ownership noted above, as part of GlassRatner's conflict check process, GlassRatner has added the additional step of comparing the names of TorQuest's other portfolio companies to names on the Interested Parties list.  To the extent any relationship is identified, it would be disclosed.  A search was performed for the connections to the Interested Parties, and based on that review, GlassRatner represents that, to the best of its knowledge, GlassRatner knows of no fact or situation that would represent a conflict of interest for GlassRatner with regard to the Debtors.

28.     The review of the Interested Parties described herein was conducted by GlassRatner pursuant to the following procedures: we check the internal databases of GlassRatner and its subsidiaries, and additionally, ask our corporate senior management, finance, accounting, compliance, and legal departments, to review the list of Interested Parties and to identify and describe any relationships.

29.     Based on the process set forth herein, it is my understanding that the overall design and implementation of GlassRatner's current procedures provide a reasonable level of comfort to GlassRatner that relationships and potential conflicts will be identified.  Continued inquiry will be made following the filing of this Declaration by undertaking the same procedures described herein on a periodic basis, with additional disclosures to be filed in this Court if necessary or otherwise appropriate.

30.     Insofar as I have been able to ascertain after due diligence, to the best of my knowledge, information, and belief after reasonable inquiry, neither I, GlassRatner, nor any of the professionals or employees participating in or connected with GlassRatner's engagement with the Debtors, advise any party in interest or any entity in these Chapter 11 Cases other than the Debtors. Thus, GlassRatner is a "disinterested person" as that term is defined in 11 U.S.C. § 101(14), as modified by 11 U.S.C. § 1107(b).  GlassRatner's due diligence has revealed that GlassRatner and its professionals:

A.     do not hold or represent any interest adverse to the Debtors or their creditors;

B.     are disinterested so as to render GlassRatner eligible to serve as chief restructuring officer and financial advisor for the Debtors under 11 U.S.C. § 105(a) and 363(b) and the applicable Bankruptcy Rules and Local Rules;

C.     are not a creditor, security holder, or insider of the Debtors and do not represent any entity (or its attorneys or accountants) other than the Debtors in connection with these Chapter 11 Cases;

D.     are not, and were not, within two (2) years before the Petition Date, a director, officer, or employee of the Debtors;

E.     do not have any interest materially adverse to the interests of the Debtors or their estates or any class of creditors or equity security holders of the Debtors, by reason of any direct or indirect relationship to, connection with, or any interest in, the Debtors or for any other reason; and

F.     as set forth herein, have no connections with the Debtors, creditors, equity interest holders, or any party in interest, or with the respective attorneys or

- 9 -

accountants of the foregoing, or with the Office of the United States Trustee or any person employed with the United States Trustee, or with any judge of the United States Bankruptcy Court for the Southern District of Florida.

31.      To the best of my knowledge, information, and belief, insofar as I have been able to ascertain after reasonable inquiry, GlassRatner has not been retained to assist any entity or person other than the Debtors on matters relating to, or in direct connection with, these Chapter 11 Cases.

32.      In addition, GlassRatner does not believe that any relationships that GlassRatner or any of its professionals or employees participating in or connection with GlassRatner's engagement with the Debtors may have with any Interested Parties in connection with any unrelated matter will interfere with or impair GlassRatner's consulting of the Debtors in these Chapter 11 Cases.

33.      Based on the above-described investigation and due diligence performed by GlassRatner, GlassRatner also believes that approval of its employment as requested in the Application is not prohibited under the provisions of Rule 5002.

34.      GlassRatner and its affiliates appear in numerous cases and proceedings, and participates in transactions that involve many different professionals, including attorneys, accountants, investment bankers, and financial consultants, who may represent claimants and Interested Parties in these Chapter 11 Cases.  In addition, GlassRatner and its affiliates may have in the past performed, currently be performing, or may perform in the future financial advisory services for various attorneys and law firms and may have in the past been, currently be, or may in the future be represented by attorneys and law firms, some of whom may become involved in this proceeding.  Based on our current knowledge of the professionals involved, and to the best of

my knowledge, none of these relationships create interests materially adverse to the Debtors in the matter upon which GlassRatner is to be employed.

35.     GlassRatner does not believe it is a "creditor" of the Debtors within the meaning of 11 U.S.C. § 101(1).  Further, neither I nor any member of the GlassRatner engagement team servicing the Debtors, to the best of my knowledge, is a holder of any of the Debtors' debt or equity securities.

36.     To the best of my knowledge, GlassRatner is a "disinterested person" within the meaning of 11 U.S.C. § 101(14).

37.     If any new relevant facts or relationships are discovered or arise GlassRatner will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration of any possible adverse connections, as required by Bankruptcy Rule 2014(a).

38.     GlassRatner is willing to be retained by the Debtors as their chief restructuring office and financial advisor consistent with, and to perform the services (collectively, the "Services") outlined in, the Engagement Letter attached to the Application as **Exhibit A** filed contemporaneously herewith. and will make appropriate application to this Bankruptcy Court for compensation and reimbursement of out-of-pocket expenses, all in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the United States Trustee's applicable guidelines and any Orders of the Court (including interim compensation orders) entered in these Chapter 11 Cases.

39.     In accordance with section 504 of the Bankruptcy Code and Bankruptcy Rule 2016, GlassRatner has not entered into any agreement to share, nor will it share compensation received for services rendered in connection with this case.  GlassRatner will endeavor to perform its services at a reasonable cost.

- 11 -

40.     I am informed and believe the Services provided by GlassRatner will complement and not duplicate the services rendered by any other professional retained in the Chapter 11 Cases.

41.     GlassRatner understands that the Debtors may retain additional professionals during the term of GlassRatner's engagement and agrees to work cooperatively with such professionals to integrate any respective work conducted by the professionals on behalf of the Debtors.

42.     Upon Court approval of the relief requested in the Application, GlassRatner will be retained as financial advisor and  provide the Debtors with the necessary personnel, and I will be designated as the Debtors' Chief Restructuring Officer pursuant to Sections 105(a) and 363(b) and the applicable Bankruptcy Rules and Local Rules.

I verify, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:  August 25, 2025.

Respectfully submitted,

*/s/ Carol Fox*
Carol Fox

- 12 -

4916-4208-7266, v. 1