## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

In re:

**Praesum Healthcare Services, LLC, et al.,**[1]
**(Jointly Administered)**

       Debtors.

Case No. 25-19335-EPK

Chapter 11

_____/

## INSTAFUNDINGUT, LLC'S *EXPEDITED* MOTION FOR ADEQUATE PROTECTION

---

### EXPEDITED HEARING REQUESTED

InstafundingUT requests that the Court hear this matter as soon as reasonably practicable given the circumstances underlying the relief requested herein. The Debtors have used InstafundingUT's collateral in violation of Section 363(c)(2) of the Bankruptcy Code. In light of the continued use of its collateral, exigent relief is necessary to avoid immediate and irreparable damage to InstafundingUT.

---

InstafundingUT, LLC ("**InstafundingUT**"), pursuant to Section 105(a), 361, and 363(e) of Title 11 of the United States Code (the "**Bankruptcy Code")** and Rule 4001 of the Federal Rules of Bankruptcy Procedure, hereby seeks entry of an order granting it adequate protection, for the Debtors unauthorized use of cash collateral, and in support thereof states the following:

---

[1] The 28 debtors in these jointly administered cases are: (1) Praesum Healthcare Services, LLC; (2) Evolve Recovery Center, LLC; (3) Evolve Recovery Center at Millbury LLC; (4) Sunrise Detox Alpharetta, LLC; (5) Sunrise Detox Brentwood, LLC; (6) Sunrise Detox Cherry Hill, LLC; (7) Sunrise Detox Duluth, LLC; (8) Sunrise Detox III, LLC; (9) Sunrise Detox Millbury, LLC; (10) Sunrise Detox Orlando, LLC; (11) Sunrise Detox Toms River, LLC; (12) The Counseling Center at Cherry Hill, LLC; (13) The Counseling Center at Clark, LLC; (14) The Counseling Center at Duluth, LLC; (15) The Counseling Center at Fair Lawn, LLC; (16) The Counseling Center at Freehold, LLC; (17) The Counseling Center at Middlesex, LLC; (18) The Counseling Center at Robbinsville, LLC; (19) The Counseling Center at Roswell, LLC; (20) The Counseling Center at Roxbury, LLC; (21) The Counseling Center at Brunswicks, LLC; (22) The Counseling Center at Toms River, LLC; (23) The Counseling Center at WestCaldwell, LLC; (24) The Counseling Center at Yorktown Heights, LLC; (25) Beacon Point Recovery Center LLC; (26) Sunrise Detoxification Center, LLC; (27) Sunrise Detox II, LLC; and (28) The Counseling Center at Millbury, LLC (collectively, the "**Debtors**").

## PRELIMINARY STATEMENT

This motion arises from the Debtors' inequitable conduct in obtaining a $7.1 million secured loan from InstafundingUT mere hours before filing for Chapter 11 protection, then immediately using InstafundingUT's collateral without notice, consent, or proper court authorization. Such actions violated Sections 363(c)(2), 363(e), and 552(b) of the Bankruptcy Code, which is designed to safeguard a secured creditor's right to receive adequate protection before its collateral is used. By deliberately omitting InstafundingUT from all service lists, the Debtors deprived InstafundingUT of its right to notice, rendered the resulting cash collateral orders defective, and used secured assets without following the Bankruptcy Code. InstafundingUT therefore seeks adequate protection in the form of a replacement lien, as security for the diminution of its collateral, to the same extent, validity, and priority it held as of the petition date.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and this matter constitutes a core proceeding under § 157(b)(2)(A) and (G). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**I.**     **The InstafundingUT Loan for $7.1 Million**

2. Timothy Doran ("**Doran**"), on behalf of the Debtors, entered into that certain *Loan Agreement* (the "**Loan Agreement**") with InstafundingUT to borrow $7.1 million.[2]

3. The Loan Agreement provides, in relevant part, that:

> [N]either Borrower nor any Secured Guarantor intends to file for reorganization or liquidation under the bankruptcy or reorganization laws of any jurisdiction within six (6) months of the Effective Date; [and] neither Borrower nor any each Secured Guarantor is presently insolvent within the meaning of the UCC as well as the United States Bankruptcy Code and neither will become insolvent upon the making of the Loan[.]

Loan Agreement at 10–11, ¶ 18.

4. Pursuant to the Loan Agreement, InstafundingUT recorded its *State of Florida Uniform Commercial Code Financing Statement Form*, File No. 202503269522 (the "**UCC-1**") with the Florida Secured Transaction Register.[3]

---

[2] A redacted copy of the Loan Agreement can be found at Dkt. No. 230-1.
[3] A redacted copy of the UCC-1 can be found at Dkt. No. 230-2.

5. The Loan Agreement and the UCC-1 gave InstafundingUT a properly perfected security interest in the Debtors' assets, including the Debtors' cash collateral as defined under Section 363 of the Bankruptcy Code.

6. The Loan Agreement was executed on August 12, 2025 at 2:28 P.M. (EST).

7. The UCC-1 was recorded on August 13, 2025 at 1:23 P.M. (EST).

## II.    The Chapter 11 Cases

8. On August 13, 2025 at 1:27 P.M. (EST), Doran executed the *Resolution of the Debtors* (the "**Corporate Resolution**"), dated August 12, 2025, authorizing the Debtors to file voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.[4]

9. On the same day (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

10. The Debtors failed to provide notice to InstafundingUT of their bankruptcy filings.

## III.    The Cash Collateral Filings

11. On August 14, 2025, the Debtors filed their *Expedited Motion to Authorize Debtors' Continued Use of Cash Collateral Effective as of the Petition Date* (Dkt. No. 15) (the "**Cash Collateral Motion**").

12. On August 19, 2025, the Court entered its *Interim Order Granting, In Part, On Temporary Basis, Expedited Motion to Authorize Debtors' Continued Use of Cash Collateral and Setting Further Hearing* (Dkt. No. 39) (the "**First Interim Cash Collateral Order**").

13. On September 15, 2025, the Court entered its *Second Interim Order Granting, In Part, On Temporary Basis, Expedited Motion to Authorize Debtors' Continued Use of Cash Collateral and Setting Further Hearing* (Dkt. No. 97) (the "**Second Interim Cash Collateral Order**").

14. On September 29, 2025, the Court Entered its *Third Interim Order Granting, In part, On Temporary Basis, Expedited Motion to Authorize Debtors' Continued Use of Cash Collateral and Setting Further Hearing* (Dkt. No. 127) (the "**Third Interim Cash Collateral Order**").

15. On October 23, 2025, the Court entered the *Fourth Interim Order Granting, in Part, on Temporary Basis, Expedited Motion to Authorize Debtors' Continued Use of Cash Collateral and Setting Further Hearing* (Dkt. No. 172) (the "**Fourth Interim Cash**

---

[4] A copy of the Corporate Resolution can be found at Dkt No. ECF No. 230-3.

**Collateral Order**", and together with the Cash Collateral Motion, First Interim Cash Collateral Order, Second Interim Cash Collateral Order, and Third Interim Cash Collateral Order, the "**Cash Collateral Filings**").

16.    InstafundingUT was never provided with notice and an opportunity to be heard on the Cash Collateral Filings. *See* Notice of Filing Master Service List Pursuant to Local Rule 2002-1(H)(2) (Dkt. No. 12) (failing to list InstafundingUT); Certificate of Service (Dkt. No. 20) (failing to certify service of the notice of hearing on InstafundingUT); Certificate of Service (Dkt. No. 22) (failing to certify service of the notice of hearing on InstafundingUT); Certificate of Service (Dkt. No. 48) (failing to certify service of the First Interim Cash Collateral Order on InstafundingUT); Notice of Filing Updated Master Service List (Dkt. No. 98) (failing to list InstafundingUT); Certificate of Service (Dkt. No. 99) (failing to certify service of the Second Interim Cash Collateral Order on InstafundingUT); Notice of Filing Second Updated Master Service List (Dkt No. 131) (failing to list InstafundingUT); Certificate of Service (Dkt. No. 132) (failing to certify service of the Third Interim Cash Collateral Order on InstafundingUT); Master Service List As Of October 24, 2025 (Dkt No. 175) (failing to list InstafundingUT); Certificate of Service (Dkt. No. 176) (failing to certify service of the Fourth Interim Cash Collateral Order on InstafundingUT).

17.    On October 20, 2025, the Debtors served InstafundingUT with a copy of the *Expedited Motion to Compel Discharge of Lis Pendens and to Enforce the Automatic Stay Against InstafundingUT, LLC and George A. Riemer, Esq. and for Sanctions* (Dkt. No. 161) after obtaining an agreement to obtain debtor-in-possession financing from City National Bank after using InstafundingUT's loan proceeds without notice and an opportunity to be heard. *See, e.g.*, Interim Order Granting Motion for Post-Petition Financing from City National Bank (Dkt No. 136) (authorizing the Debtors to obtain DIP financing from City National Bank).

18.    InstafundingUT was also not provided notice of the DIP financing filings therevy rendering those filings defective.

19.    On November 6, 2025, InstafundingUT filed its *Motion of Secured Creditor, InstafundingUT, LLC to Allow Filing of Late Proof of Claim* (ECF No. 230), which the Court granted on November 10, 2025 (ECF No. 246).

20.    A proposed form of order granting the relief requested herein is attached hereto as **Exhibit A**.

4

## RELIEF REQUESTED

### I.    The Debtors' Unauthorized Use of Cash Collateral Violated Section 363(c)(2) of the Bankruptcy Code

21.    Under 11 U.S.C. § 363(c)(2), a debtor in possession may not use "cash collateral" unless each entity that has an interest in such collateral consents or the court authorizes such use after notice and a hearing.  11 U.S.C. § 362(c)(2).  The record demonstrates that the Debtors used InstafundingUT's cash collateral without notice, consent, or prior court authorization.

22.    Section 363(e) further provides that, "on request of an entity that has an interest in property used [. . .] by the trustee, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).  This mandate is not discretionary—the court "shall" condition use to ensure adequate protection. *See, e.g.*, *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984) (recognizing that a secured creditor's interest in its collateral is a constitutionally protected property right that cannot be threatened by unauthorized use of cash proceeds).

23.    Adequate protection is intended to safeguard the creditor against diminution in value of its collateral during the pendency of the case.  *See, e.g.*, *In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985) ("The concept of adequate protection was designed to '*insure* that the secured creditor receives the *value* for which he bargained.'") (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 53, *reprinted* in 1978 U.S. Code Cong. & Ad. News 5787, 5839)); *In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996) ("The goal of adequate protection is to safeguard the secured creditor from diminution in the value of *its interest* during the Chapter 11 reorganization.") (internal citation omitted).  It may be provided through periodic cash payments, additional or replacement liens, or other relief providing the indubitable equivalent of the creditor's interest.  11 U.S.C. § 361(e)(1)–(3).

24.    Courts have consistently held that a creditor whose cash collateral is used retains the right to adequate protection and may be granted replacement liens to compensate for the diminution in value caused by the unauthorized use.  *See, e.g.*, *In re Westport Holdings Tampa, Ltd. P'shp*, 595 B.R. 428, 432 (Bankr. M.D. Fla. 2018) ("[W]hen adequate protection is required under § 363 to protect an interest in cash collateral, the adequate protection may include a replacement lien in the cash collateral[.]"); *see also Matter of Karl A. Neise, Inc.*, 16 B.R. 600, 602 (Bankr. S.D. Fla. 1981) ("As this Court is expressly permitted to grant an additional lien to protect entities such as these creditors, it will, therefore, authorize and

direct the Debtors to grant additional liens [to those creditors] [. . .] in order to afford them adequate protection and preserve their relative priorities in the assets subject to their respective liens.").

25.     Because the Debtors' unauthorized use of InstafundingUT's cash collateral may have diminished the value of that collateral, InstafundingUT is entitled to immediate and ongoing adequate protection in the form of replacement liens to the same extent, validity, and priority it had as of filing of the petition. *See, e.g.*, *In re Casbeer*, 793 F.2d 1436, 1441–1444 (5th Cir. 1986) (upholding the district court's affirmation of bankruptcy court order granting creditor replacement lien for debtor's use of cash collateral without consent or proper court approval); *In re Strick Chex Columbus Two, LLC*, 542 B.R. 914, 920 (Bankr. N.D. Ga. 2015) ("If the court authorizes the use of cash collateral, that use must be conditioned as necessary to provide adequate protection of the creditor's interest in the collateral.") (citing 11 U.S.C. § 363(e); *In re Scottsdale Med. Pavillion*, 159 B.R. 295, 302 (B.A.P. 9th Cir. 1993)); *In re C.G. Chartier Cnst., Inc.*, 126 B.R. 956 (E.D. La. 1991) (affirming bankruptcy court order preventing debtor from using secured creditor's cash collateral without providing said creditor with adequate protection in the form of a replacement lien or periodic payments); *In re Schwartz*, 213 B.R. 695, 699 (Bankr. S.D. Ohio 1997) ("A replacement lien is an appropriate remedy where a debtor uses cash collateral without secured party consent or [an appropriate] court order."); *In re Aerosmith Denton Corp.*, 36 B.R. 116, 119 (Bankr. N.D. Tex. 1983) (awarding replacement lien for cash collateral that debtor improperly spent).

26.     Accordingly, InstafundingUT requests replacement liens on all postpetition assets and proceeds of the same type as its prepetition collateral, to the extent of any diminution in value caused by the Debtors' unauthorized or inadequately protected use of cash collateral.

## II.    InstafundingUT's Lien Properly Extends to Cash and Its Proceeds Under Section 552(b) of the Bankruptcy Code

27.     InstafundingUT holds a properly perfected prepetition security interest in the Debtors' accounts receivable, chattel paper, general intangibles, and the proceeds therefrom. *See* UCC-1 (providing description of InstafundingUT's security interest in collateral).  That lien extends to the Debtors' use of cash collateral,  which includes "cash, negotiable instruments, deposit accounts, or other cash equivalents", pursuant to Section 552 of the Bankruptcy Code.

28.     Under Section 552(b)(1) of the Bankruptcy Code, a prepetition security interest continues postpetition in "proceeds, products, offspring, or profits" of prepetition collateral to the extent provided by the security agreement and applicable nonbankruptcy law.  11 U.S.C. § 552(b)(1).  In other words, "Section 552(b) provides that if a pre-petition security interest encumbers collateral and its proceeds, any proceeds of that pre-petition collateral remain subject to the security interest even if they are received post-petition."  *In re Skagit Pac. Corp.*, 316 B.R. 330, 335 (B.A.P. 9th Cir. 2004);  *see also In re Lykes Bros. S.S. Co.*, 216 B.R. 856, 864 (Bankr. M.D. Fla. 1996) ("The concept of 'proceeds' is [. . .] implicated when 'one asset is disposed of and another is acquired as its substitute.") (quoting *In re Hastie*, 2 F.3d 1042, 1045 (10th Cir. 1993)); *In re Corpus Christi Hotel Partners, Ltd.*, 133 B.R. 850, 856 (Bankr. S. D. Tex. 1991) ("Congress intended to extend a pre-petition lien post-petition when collateral is converted into new property.").

29.     In the Eleventh Circuit "determining whether a party has a security interest within the meaning of § 552 is a question of state law, but whether the property at issue in a given case are 'proceeds,' as that term is used in § 552, is a matter of statutory interpretation and federal law."  *See generally Fin. Sec. Assurance, Inc. v. Tollman-Hundley Dalton, L.P.*, 74 F.3d 1120, 1123–24 (11th Cir. 1996) (per curiam).  Courts are mindful in making determination under Section 552(b) of the Bankruptcy Code that "Congress intended [it] to cover a wide range of derivate property."  *Id.*

30.     "In order for a pre-petition security interest to attach to a debtor's after-acquired cash [under Section 552], making it 'cash collateral,' the secured creditor must show that the security agreement attached to the proceeds of the collateral covered by the agreement and that the proceeds claimed as cash collateral are [. . .] 'proceeds [. . .] of pre-petition property subject to the lien.'"  *In re Strick Chex Columbus Two, LLC*, 542 B.R. 914, 918 (Bankr. N.D. Ga. 2015) (quoting *In re Cafeteria Operators, L.P.*, 299 B.R. 400, 405 (Bankr. N.D. Tex. 2003)).

31.     Here, InstafundingUT's Loan Agreement and corresponding UCC-1 expressly cover all "accounts, contract rights, rights to payment of money, and all proceeds thereof."  *See generally* UCC-1.  Under Florida law, that language is sufficient to attach a security interest to both the accounts receivable themselves and any identifiable cash proceeds resulting from their collection.  *See* Fla. Stat. Ann. § 679.2031(1) (providing that attachment of security interest when value given, debtor has rights, and collateral is described); Fla. Stat. Ann. § 679.3151(1)(b) ("A security interest attaches to any identifiable proceeds of

collateral."). Because "proceeds" under Section 679.1021 of the Florida Statutes include "whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral," the Debtors' cash collections and deposit-account receipts derived from receivables constitute "identifiable proceeds" of InstafundingUT's collateral. Fla. Stat. Ann. § 679.1021(1)(pp).

32.     Moreover, under Section 679.3151 of the Florida Statutes, InstafundingUT's perfected security interest in those proceeds remains perfected for at least twenty (20) days after the proceeds are received and continues thereafter so long as they are identifiable or otherwise fall within the scope of the original financing statement. Fla. Stat. Ann. § 679.3151(3). InstafundingUT's prepetition lien properly extends, under both Florida's state law and § 552(b) of the Bankruptcy Code, to all identifiable cash proceeds derived from the Debtors' prepetition accounts receivable, inventory, and other covered assets, including any "cash collateral" as defined under Section 363 of the Bankruptcy Code.

33.     Because InstafundingUT's security interest attached pre-petition under Florida law and remains perfected in proceeds thereof, the Debtors' cash collateral is encumbered by InstafundingUT's continuing lien to the same extent, validity, and priority as it was pre-petition. Any use of such cash collateral postpetition therefore required InstafundingUT's consent or an order providing it with adequate protection. As a result, even if the Debtors deposited InstafundingUT's collateral proceeds into accounts at other institutions, those funds remain cash collateral, and InstafundingUT's lien continues in the identifiable proceeds.

34.     Accordingly, the Debtors' use of those proceeds, without consent or court authorization, violated Section 363(c)(2) of the Bankruptcy Code and requires the imposition of replacement liens and other protections under Sections 361 and 363(e).

III.    **The Equities of the Case Strongly Favor InstafundingUT**

35.     Apart from the express statutory protections afforded under Sections 361, 363, and 552 of the Bankruptcy Code, the equities of this case compel the Court to grant appropriate relief to InstafundingUT. Section 105 authorizes this Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This broad equitable authority empowers the Court to fashion remedies that ensure fairness, prevent abuse of the bankruptcy process, and uphold the integrity of the reorganization system. *See, e.g., Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375

(2007) (recognizing that § 105(a) allows a bankruptcy court to take action "to prevent an abuse of process" and to safeguard the integrity of the bankruptcy system).

36.    Here, the record demonstrates that the Debtors knowingly executed a multi-million-dollar loan agreement with InstafundingUT mere hours before filing their bankruptcy petitions, expressly representing that they had no intent to file for bankruptcy and that they were solvent at the time of execution.  Yet within hours, the Debtors filed for Chapter 11 relief and began using InstafundingUT's collateral, without notice, consent, or an opportunity for InstafundingUT to be heard.  Such conduct not only undermines the statutory protections afforded secured creditors under Sections 361, 363, and 552 of the Bankruptcy Code, but also offends the equitable principles upon which the bankruptcy system is grounded.

37.    Under these circumstances, the Court's equitable powers under Section 105 of the Bankruptcy Code are properly invoked to remedy the Debtors' misuse of the bankruptcy process and to restore the parties to the positions they would have occupied but for that conduct.  The Eleventh Circuit has long recognized that Section 105(a) is intended to enable the court to do whatever is necessary to aid in the exercise of its jurisdiction and to enforce or implement court orders or rules, or to prevent an abuse of process.  *See In re Jove Eng'g, Inc.*, 92 F.3d 1539, 1554 (11th Cir. 1996) ("[T]he plain meaning of § 105(a) encompasses *any* type of order, whether injunctive, compensatory or punitive, as long as it is 'necessary or appropriate to carry out the provision of' the Bankruptcy Code.").  That authority includes the power to fashion equitable relief ensuring that the Debtors do not benefit from their own misrepresentations and that a secured creditor's bargained-for rights are not unfairly stripped away through procedural gamesmanship.

38.    Equity also favors protecting InstafundingUT because the Debtors' actions resulted in the immediate and unauthorized dissipation of collateral proceeds that were perfected and identifiable under Florida state law.  The Debtors' failure to list InstafundingUT on any service lists, or to provide notice of the cash collateral hearings, deprived InstafundingUT of its due process rights.  *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding [. . .] is notice reasonably calculated [. . .], to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

39.    The equitable powers granted by Section 105(a) authorize this Court to correct such procedural inequities and to ensure that creditors like InstafundingUT receive the

protections mandated by the Bankruptcy Code. *See, e.g.*, *In re CHA Hawaii, LLC*, 426 B.R. 828 (Bankr. D. Haw. 2010) (requiring Chapter 11 debtors that used cash collateral without proper authorization to provide creditor with adequate protection through replacement lien); *In re J.L. Graphics, Inc.*, 62 B.R. 750, 754 (Bankr. D.N.H. 1986) ("[T]he court might be justified in using [. . .] § 105 of the Bankruptcy Code to grant the Bank a "replacement lien" in post-petition receivable collections [. . .] for the debtor's unauthorized use of cash collateral.").

40.     In sum, equity demands that InstafundingUT not be penalized for extending financing immediately prior to the Debtors' filings, nor should the Debtors be permitted to retain the benefit of funds obtained under false pretenses and then used in violation of both statutory and procedural safeguards. The Court's intervention is necessary to preserve the integrity of the bankruptcy process and to ensure that the Debtors' estate does not unjustly enrich itself at InstafundingUT's expense.

## CONCLUSION

WHEREFORE, InstafundingUT requests entry of an order: (i) granting the relief requested in this Motion; (ii) granting  InstafundingUT with a replacement lien, as security to the extent of the diminution of its collateral, to the same extent, nature, and priority held prepetition; and (iii) for such other and further relief that is just and proper.

**Dated: November 14, 2025**

**EDELBOIM LIEBERMAN PLLC**
*Counsel for InstafundingUT, LLC*
2875 NE 191st St., Penthouse One
Miami, FL 33180
Telephone: (305) 768-9909
Facsimile: (305) 928-1114
Email: morgan@elrolaw.com
Email: alex@elbizlaw.com

By:     */s/ Alexander Lewitt*
        Morgan B. Edelboim, Esq. (FBN 40955)
        Alexander Lewitt, Esq. (FBN 1048121)

## CERTIFICATE OF SERVICE

I HEREBY certify that a true and correct copy of the foregoing was served on November 14, 2025 by Notice of Electronic Filing to all parties registered to receive electronic notification via CM/DKT notification and upon the Twenty (20) largest unsecured creditors.

By:     */s/ Alexander Lewitt*
        Morgan B. Edelboim, Esq.