UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

Praesum Healthcare Services, LLC,[1]              Case No. 25-19335-EPK
(Jointly Administered)

       Debtors.                                     Chapter 11
_____/

### ***EXPEDITED*** MOTION FOR PRIMING POST-PETITION FINANCING FROM eCAPITAL HEALTHCARE, CORP.

**Basis for Expedited Hearing:**

**The Debtors urgently require the financing described herein to fund their ongoing operations. The Debtors require such financing at the earliest opportunity to meet their ongoing obligations and remain in business. Accordingly, the Debtors respectfully request that this matter be set for a hearing at the earliest available date.**

---

[1] The 28 Debtors in these jointly administered cases are: (1) Praesum Healthcare Services, LLC, Case No. 25-19335-EPK; (2) Evolve Recovery Center, LLC, Case No. 25-19336-EPK; (3) Evolve Recovery Center at Millbury LLC, Case No. 25-19340-EPK; (4) Sunrise Detox Alpharetta, LLC, Case No. 25-19343-EPK; (5) Sunrise Detox Brentwood, LLC, Case No. 25-19346-EPK; (6) Sunrise Detox Cherry Hill, LLC, Case No. 25-19348-EPK; (7) Sunrise Detox Duluth, LLC, Case No. 25-19356-EPK; (8) Sunrise Detox III, LLC, Case No. 25-19359-EPK; (9) Sunrise Detox Millbury, LLC, Case No. 25-19362-EPK; (10) Sunrise Detox Orlando, LLC, Case No. 25-19363-EPK; (11) Sunrise Detox Toms River, LLC, Case No. 25-19365-EPK; (12) The Counseling Center at Cherry Hill, LLC, Case No. 25-19366-EPK; (13) The Counseling Center at Clark, LLC, Case No. 25-19367-EPK; (14) The Counseling Center at Duluth, LLC, Case No. 25-19368-EPK; (15) The Counseling Center at Fair Lawn, LLC, Case No. 25-19337-EPK; (16) The Counseling Center at Freehold, LLC, Case No. 25-19339-EPK; (17) The Counseling Center at Middlesex, LLC, Case No. 25-19341-EPK; (18) The Counseling Center at Robbinsville, LLC, Case No. 25-19342-EPK; (19) The Counseling Center at Roswell, LLC, Case No. 25-19344-EPK; (20) The Counseling Center at Roxbury, LLC, Case No. 25-19345-EPK; (21) The Counseling Center at Brunswicks, LLC, Case No. 25-19347-EPK; (22) The Counseling Center at Toms River, LLC, Case No. 25-19349-EPK; (23) The Counseling Center at West Caldwell, LLC, Case No. 25-19351-EPK; (24) The Counseling Center at Yorktown Heights, LLC, Case No. 25-19352-EPK; (25) Beacon Point Recovery Center LLC, Case No. 25-19354-EPK; (26) Sunrise Detoxification Center, LLC, Case No. 25-19355-EPK; (27) Sunrise Detox II, LLC, Case No. 25-19357-EPK; and (28) The Counseling Center at Millbury, LLC, Case No. 25-19358-EPK.

{2519/000/00587399}

The Debtors, pursuant to 11 U.S.C. §§ 364(c)(1) and (d)(1), requests that the Court approve the $7,500,000.00 in post-petition financing described in this Motion (the "DIP Financing"). In support, the Debtors state:

## SUMMARY OF FINANCING TERMS

| *Parties* | |
|---|---|
| **Debtors** | All |
| **DIP Lender** | eCapital Healthcare Corp., a Delaware corporation (the "Lender"), which is not an insider of any of the Debtors. |

| *General Provisions* | |
|---|---|
| **Total Financing Available** | • $7,500,000.00 credit line/DIP facility<br>• With same subject to a borrowing base of 85% of the net collectible value of the Debtors' accounts receivable |
| **Interest and Fees** | • Interest at the Prime Rate + 1.5%<br>• Default interest at Prime Rate + 5.5%<br>• Collateral management fee of 0.2% per month on outstanding balance<br>• Unused line fee of 0.083% per month on the unused portion of the credit line<br>• Upfront origination fee of 1%<br>• Termination fee of 1%<br>• All invoiced fees and expenses of Lender's counsel for legal services and due diligence over and above a $150,000 non-refundable, earned-upon-receipt deposit for same due immediately. |
| **Maturity** | • Earlier of: (a) August 13, 2026; (b) the consummation of a sale of substantially all Debtors' assets; (c) termination upon default; and (d) plan effective date |
| **Security** | • A first-priority, priming lien on all of the Debtors' assets, with such lien deemed effective and perfected; and<br>• A superpriority administrative expense claim |
| **Permitted Uses** | • Working capital and general corporate expenses;<br>• Professional and administration fees and expenses;<br>• DIP facility obligations;<br>• All subject to budgets approved by the DIP Lender |

**PERTINENT FACTS**

1. On August 13, 2025 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

2. Each of the 28 Debtors is operating its business and managing its affairs as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. No trustee or examiner has been appointed in these jointly administered cases.

4. Debtor Praesum Healthcare Services, LLC ("Praesum Healthcare") is a Florida limited liability company located in Lake Worth, Florida. Praesum Healthcare provides administrative services to each of the 27 other Debtors, which each operate treatment facilities. The Debtors' operations, as a whole, are referred to herein as "Praesum."

5. Specifically, the 27 treatment provider Debtors operate on the following continuum of care:

   a. **Detox**. Detox facilities operate at the most intensive level of care and provide residential patients with substance abuse treatment. The following **eleven** Debtors operate as Detox facilities in the following locations: Sunrise Detox Millbury, LLC (Massachusetts), The Counseling Center at Yorktown Heights, LLC (New York), Sunrise Detox Toms River, LLC (New Jersey), Sunrise Detox Cherry Hill, LLC (New Jersey), Beacon Point Recovery Center, LLC (Pennsylvania), Sunrise Detox Alpharetta, LLC (Georgia), Sunrise Detox Duluth, LLC (Georgia), Sunrise Detoxification Center, LLC (Florida), Sunrise Detox III, LLC (Florida), Sunrise Detox Orlando, LLC (Florida); and Sunrise Detox Brentwood, LLC (New York).

   b. **Residential**. Residential facilities operate at the next level of care and provide substance abuse treatment to residential patients. The following **three** Debtors

3

      operate Residential facilities in the following locations: Evolve Recovery Center at Millbury, LLC (Massachusetts), Sunrise Detox II, LLC (New Jersey), and Evolve Recovery Center, LLC (New Jersey);

    c. **Outpatient.** Outpatient facilities offer less intensive substance abuse and mental health treatment to non-residential patients. The following **thirteen** Debtors operate Outpatient facilities in the following locations: The Counseling Center at Millbury, LLC (Massachusetts), The Counseling Center at Freehold, LLC (New Jersey), The Counseling Center at Fair Lawn, LLC (New Jersey), The Counseling Center at Clark, LLC (New Jersey), The Counseling Center at Toms River, LLC (New Jersey), The Counseling Center at Cherry Hill, LLC (New Jersey), The Counseling Center at Roxbury, LLC (New Jersey), The Counseling Center at Middlesex, LLC (New Jersey), The Counseling Center at the Brunswicks, LLC (New Jersey), The Counseling Center at West Caldwell, LLC (New Jersey), The Counseling Center at Robbinsville, LLC (New Jersey), The Counseling Center at Roswell, LLC (Georgia), and The Counseling Center at Duluth, LLC (Georgia).

6. The Debtors require the financing described herein to continue their operations. Without financing, the Debtors will have to immediately begin winding down operations.

7. Praesum is one of the largest independent behavioral healthcare providers in the eastern United States, serving more than 15,000 patients each year- in New Jersey alone it cares for 10% of the Statewide admissions for detox and residential services. The organization is in-network with over 50 insurance companies, including CMS/Medicare and Medicaid, and provides a full continuum of care for individuals and families seeking treatment for addiction and mental health disorders.

8. The closure of Praesum's programs will immediately strain emergency departments, hospitals, and community behavioral health providers that are already operating at or above capacity. Individuals requiring detoxification, stabilization, and medication-assisted treatment will have few safe alternatives. Without continuity of care, there is a heightened risk of overdose, relapse, psychiatric crisis, and hospitalization. Coordination with state agencies, payers, and local providers will be essential to prevent loss of life and to protect public health during this transition.

9. If the Debtors cease operations, over 750 employees will also be affected, many of whom have dedicated their professional lives to saving others. The loss of these positions will ripple through their households and the communities that depend on their work.

10. Simply put, the closure of the Debtors' facilities would be devastating from both a patient health and economic perspective.

11. For these reasons, the Debtors have sought out post-petition financing ("DIP Financing") and obtained proposed terms from eCaptial Healthcare, Corp. (the "Lender").

12. A term sheet for such proposed DIP Financing is attached hereto as **Exhibit A** (the "Term Sheet").[2] Such terms are summarized above and in the Term Sheet itself. In general, such terms provide for a credit facility up to $7,500,000 secured by a senior lien on all of the Debtors' assets that primes all other liens. The Lender shall also have a superpriority administrative expense claim.

13. The terms for the proposed DIP Financing are the most favorable that the Debtors have been able to obtain from any source. Furthermore, no potential lender has offered to extend necessary post-petition credit to the Debtors on an unsecured basis, on a non-superpriority

---

[2] Unless otherwise defined herein, capitalized terms shall have the meaning given them in the Term Sheet.

administrative expense claim basis, or on a basis that does not otherwise include a senior secured lien on all of the Debtors' asserts that primes all other liens.

14. The proposed DIP Financing will allow the Debtors to continue business as a going concern and, more importantly, generate increased value and protect the Debtors' ability to provide a return to unsecured creditors. Absent the financing, the Debtors cannot operate.

15. The following parties may have claims secured by liens on the Debtors' receivables and other assets (together, the "Creditors"), with asserted claims totaling $26,680,643.00. Where Creditors filed proofs of claim, the amounts are noted:[3]

   a. City National Bank of Florida--$19,102,403.60;
   b. C T Corporation System, As Representative;
   c. ASD Special Healthcare, LLC dba Besse Medical--$1,263,321.40[4];
   d. Amerisourcebergen Drug Corporation;
   e. United States Small Business Administration;
   f. Navitas Credit Corp.;
   g. Family Funding Group LLC;
   h. First Corporate Solutions, As Representative;
   i. Funders App, LLC dba Capifi Funding--$3,347,500;
   j. I Got Funded, LLC;
   k. Meged Funding Group--$514,285.74;
   l. Palm Beach County Tax Collector--$3,132.27; and
   m. Wynwood Capital Group, LLC--$449,999.99

---

[3] For the avoidance of doubt, the Debtors reserve the right to object to any and all claims and do not admit to the validity, priority, or extent of any claimed liens.

[4] Against Sunrise Detox Millbury;

16. Attached hereto as **Exhibit B** is a summary of an accounts receivable valuation report (the "AR Report") prepared by Coronis Health I, LLC ("Coronis"). As of September 12, 2025, the Debtors' accounts receivable represented roughly $31.3 million in value. Attached hereto as **Exhibit C** is a summary of a 4-wall report for the twelve months ending August 31, 2025 (the "4-Wall Report") prepared by the Debtors' financial advisor Glass Rattner. Pursuant to the 4-Wall Report, the Debtors generate roughly $99 million in revenue and have EBIDTA of roughly $19.5 million. Application of a conservative revenue or EBIDTA multiple for valuation purposes reveals the value of the Debtors as a going concern falls in the nine-figure range. Accordingly, the Creditors currently and will continue to enjoy an equity cushion of well over 100% of their claims.

## ARGUMENT

17. Section 364 of the Bankruptcy Code authorizes a debtor to obtain post-petition financing under certain circumstances. Provided that an agreement to obtain credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance with its reasonable business judgment in obtaining such credit. *See In re YL W. 87th Holdings I LLC*, 423 B.R. 421, 441 (Bankr. S.D.N.Y. 2010) ("Courts have generally deferred to a debtor's business judgment in granting section 364 financing."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (stating that "cases consistently reflect that the court's discretion under section 364 [of the Code] is to be utilized on grounds that permit [a debtor's] reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest").

18. 11 U.S.C. § 364(c)(1) permits a debtor to obtain post-petition financing that is allowable as a superiority administrative expense claim if the Debtor cannot obtain post-petition financing without such claim allowance.

19. Further, section 364(d)(1) permits a debtor to obtain credit secured by a senior/priming lien on property of the estate that is already subject to a lien if a debtor cannot otherwise obtain credit and there is adequate protection for the existing lien holders.

20. The Debtors require the financing described in this motion to continue operations. Without financing, the Debtors will fail. The Debtors will receive such financing pursuant to the terms described above, and the Lender will receive a priming lien and a superpriority administrative expense claim. The lack of such financing will result in the Debtor's immediate closure and the failure of these cases. All parties in interest, including secured and unsecured creditors, would receive less.

21. Given the emergent need for financing, the Debtors are unable to obtain credit other than under the terms proposed by the Lender. Additionally, the Creditors will be adequately protected by a significant equity cushion of over 100% of the Creditors' claim value, assuming the Creditors' claims are allowed in full. *See In re McKillips*, 81 B.R. 454, 458 (Bankr. N.D. Ill. 1987). Additionally, the financing will preserve the Debtors' value as a going concern, protecting the Creditors' existing collateral. Failure to secure the financing will result in the total loss of any going-concern value, including negatively impacting the Debtors' ability to recover their receivables. Accordingly, the DIP Financing proposed herein is commercially reasonably, a sound exercise of the Debtors' business judgment, and in the best interest of all interested parties.

**WHEREFORE**, the Debtor requests that the Court enter an order (1) granting this Motion; (2) authorizing the Debtor to obtain post-petition financing on the terms described herein and in the Term Sheet; (3) scheduling a final hearing; and (4) granting such other and further relief as is just and proper.

Respectfully submitted,

**SHRAIBERG PAGE P.A.**
Attorneys for the Debtors
2385 NW Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bss@slp.law
Email: ependergraft@slp.law

By: */s/ Bradley S. Shraiberg*
　　Bradley S. Shraiberg
　　Florida Bar No. 121622
　　Eric Pendergraft
　　Florida Bar No. 91927

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service in this case list on November 14, 2025.

　　　*/s/ Bradley S. Shraiberg*

9

# EXHIBIT A

**PRAESUM HEALTHCARE SERVICES, LLC**

Term Sheet for
Secured Superpriority Debtor in Possession Revolving Loan

**November 5, 2025**

This term sheet (the "Term Sheet") sets forth a summary of the indicative terms and conditions of potential debtor-in-possession financing that may be provided by eCapital Healthcare, Corp. and/or one or more of its affiliates, as a lender (in such capacities, "eCapital" or "DIP Lender"). It is for discussion purposes only and is not binding on the parties. This Term Sheet does not represent a commitment, obligation, or agreement on the part of DIP Lender to provide financing to the Borrowers. DIP Lender shall not be so obligated unless and until all internal approvals are sought and obtained, all definitive documentation is negotiated and executed, and all conditions precedent are satisfied or waived. The definitive documentation may contain different or additional terms that vary from the terms described herein.

|   | Term | Description |
|---|------|-------------|
| 1 | Borrowers | Praesum Healthcare Services, LLC, and its affiliated Debtors and Debtors in Possession listed on **Schedule 1** attached hereto. |
| 2 | Guarantors | All existing and future, direct and indirect subsidiaries of the Borrowers that are Debtors in the Cases (collectively, the "Guarantors" and, together with the Borrowers, the "Debtors"). All obligations of the Borrowers under the DIP Facility (the "DIP Obligations") will be unconditionally guaranteed on a joint and several basis by the Guarantors. |
| 3 | DIP Lender | eCapital Healthcare, Corp. and/or one or more of its affiliates |
| 4 | DIP Facility | eCapital will provide Borrowers a superpriority, secured, Debtor in Possession revolving credit facility with a facility cap of Seven Million Five Hundred Thousand Dollars ($7,500,000) (the "Facility Cap").<br><br>Advances under the DIP Facility (each, an "Advance," and collectively, the "DIP Loans") will be available up to a maximum amount outstanding at any one time equal to the amount of the Borrowing Base (as defined in the DIP Credit Agreement). The Borrowers will only be permitted to request that the DIP Lender make DIP Loans to the extent required to pay, when due, those expenses enumerated in the Approved Budget (as defined below) and as may otherwise be permitted or required by the DIP Orders (as defined below).<br><br>The DIP Facility will be evidenced by a credit agreement (the "DIP Credit Agreement"), security documents, guarantees, control agreements, and other legal documentation (collectively, together with the DIP Credit Agreement, the "DIP Loan Documents") required by eCapital, which DIP Loan Documents shall be in form and substance consistent with this Term Sheet. The DIP Lender and the Borrowers shall execute and deliver the DIP Loan Documents as soon as reasonably practicable and in any event before the Chapter 11 Cases are filed. |
| 5 | Venue | Southern District of Florida |
| 6 | Form of DIP Order | All orders approving DIP financing (collectively, "DIP Orders") shall be acceptable to DIP Lender in its reasonable discretion and shall include (1) DIP lien/claim priority provisions; bankruptcy and credit agreement events of default; bankruptcy document/filing review/approval rights; reporting, etc., (2) |

4935-5254-9685.4

| | Term | Description |
|---|---|---|
| | | as of final order, bankruptcy and related waivers for the benefit of DIP Lender (e.g., §§ 506(c), 551, 552, no marshaling), (3) cash management system and depository accounts maintained, (4) customary budget-based professional fee carve out, (5) standard DIP Lender fee and expense reimbursement provisions, and (6) reasonable and customary release for the benefit of DIP Lender. |
| 7 | Subordination and/or Intercreditor Agreement(s) | Subordination or intercreditor agreements with other lenders or interested parties on terms and conditions satisfactory to DIP Lender in its discretion, including an agreement with City National Bank of Florida ("**CNB**"), which agreements shall include subordination and standstill provisions on terms acceptable to DIP Lender |
| 8 | Reserves | Determined in the reasonable credit judgment of DIP Lender |
| 9 | Use of Proceeds | In accordance with the budget, the form and substance of which are subject to approval by the DIP Lender in its sole discretion (each such budget, an "***Approved Budget***"), but subject to a variance of Fifteen Percent (15%) (the "***Permitted Variance***"), the proceeds of the DIP Loans under the DIP Facility will be used only for the following purposes:<br><br>• working capital and other general corporate purposes of the Borrowers, and their subsidiaries that are Loan Parties under the DIP Documents;<br>• professional fees and expenses of administering the Chapter 11 Cases (including fees incurred prior to the Closing Date) in accordance with the Bankruptcy Code and any orders of the Bankruptcy Court, as applicable;<br>• fees and expenses payable under the DIP Facility; and<br>• interest and other amounts payable under the DIP Facility.<br><br>Definitive documents will include standard restrictions on the use of DIP proceeds. |
| 10 | Certain Financial Covenants | In addition to the covenants reflected in Section 20 of this Term Sheet, the DIP Loan Documents shall include the following financial covenants:<br><br>• Cash Flow Budget Variance - Budget covenants, i.e., total receipts, total disbursements, total net operating cash flow, tested on a cumulative two-week basis during the third week after the Petition Date and then on a cumulative, rolling two-week basis thereafter, subject to the Permitted Variance and in accordance with Section 9 of this Term Sheet.<br>• Professional Fees - Monthly reporting as to accrued professional fees (i.e., with and without reference to the budget).<br>• Unpaid Administrative Claims - Monthly reporting as to accrued operating costs and other administrative claims (i.e., with and without reference to the budget; accrual in excess of Fifteen Percent (15%) of budget gives rise to a Default).<br>• Controlled Accounts - DIP Facility proceeds shall be advanced into a deposit account to be used solely for customary operating costs and disbursements, subject to the budget, and such account shall be subject to a control agreement in form and substance satisfactory to DIP Lender. |

|    | Term | Description |
|----|------|-------------|
|    |      | - DIP Credit Agreement and other Loan Documents - Standard and customary for transactions of this type and complexity (including representations, warranties (representations to include that Borrowers has no knowledge of any mechanic's liens), covenants and indemnification) and in form and substance satisfactory to DIP Lender, and to include the following conditions precedent: (i) completion of customary due diligence (including review of accounts payable terms and conditions and lien searches), (ii) minimum liquidity/availability to be determined as of the closing date of the DIP Credit Agreement, (iii) execution of subordination agreements in form and substance satisfactory to DIP Lender, and (iv) approval of DIP budget.<br>- Fixed Charge Coverage Ratio of 1.0:1.0.<br>- Loan Turnover Rate not greater than 59 days outstanding. |
| 11 | Availability | Availability under DIP Facility shall be in an amount equal to 85% of the net collectible value of Borrowers' accounts receivable (i.e., Borrowers' accounts and payment intangibles) from eligible, third-party payors (including Medicare, Medicaid, and commercial insurance) up to 150 days following the date of service. |
| 12 | Payment Conditions | All Accounts collections will be credited to the Borrowers' obligations daily, subject to five (5) business days' clearance (i.e., in accordance with standard ABL "full dominion" practices). Upon the Maturity Date, Borrowers shall repay in full in cash the outstanding balance of the DIP Facility. |
| 13 | Closing Date | The date of the entry of the order approving the DIP Facility on an interim basis (the "<u>Interim DIP Order</u>," and such date, the "<u>Closing Date</u>") and the satisfaction of any other conditions precedent included in the definitive documentation. |
| 14 | Interest Rate | All amounts due under the DIP Facility shall bear interest at a rate equal to the Prime Rate + 1.50% percent per annum, calculated on a 360-day basis, and payable in cash (a) monthly in arrears on the first business day of each month and (b) on the DIP Termination Date.<br><br>"<u>Prime Rate</u>" means the rate of interest per annum publicly announced as the prime rate by the Wall Street Journal in New York, New York, from time to time. Each change in the Prime Rate shall be effective from and including the date such change is publicly announced as being effective. |
| 15 | Default Interest Rate | During the continuance of a Default or an Event of Default, all obligations under the DIP Facility will bear cash interest at an additional four percent (4%) per annum, calculated on a 360-day basis. |

|    | Term | Description |
|----|------|-------------|
| 16 | DIP Fees | • At the end of each month, Borrowers shall pay Lender a collateral management fee of zero point two zero percent (0.20%) per month on the outstanding balance of the DIP Facility.<br>• At the end of each month, Borrowers shall pay Lenders an unused line fee of zero point zero eight three percent (0.083%) per month of the average unused portion of the DIP Facility.<br>• Upon entry of the Interim DIP Order, a fully earned, non-refundable origination fee of one percent (1.0%) of the Facility Cap shall be approved to be paid by Borrowers to DIP Lender.<br>• Termination fee of one percent (1.0%) of the Facility Cap. |
| 17 | DIP Lender Fees and Expenses | Upon execution of this Term Sheet, the DIP Lender shall promptly file an emergency motion to request authority to immediately deliver One Hundred Fifty Thousand Dollars ($150,000) to DIP Lender as a non-refundable, fully earned deposit for the purposes of paying legal and diligence fees prior to closing. Following closing in accordance with the DIP Order, Borrowers shall pay in full all invoiced fees and expenses of the DIP Lender's Counsel, and such amount shall be added to the DIP Obligations. |
| 18 | Priority | All amounts owing by the Borrowers as DIP Obligations at all times will constitute allowed superpriority administrative expense claims in the Cases under section 364(c)(1) of the Bankruptcy Code, with priority over all claims and administrative expense claims now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, of the types specified in or ordered under sections 105, 326, 327, 328, 330, 331, 361, 362, 363, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 552(b), 726, 1113, 1114 and any other provision of the Bankruptcy Code.<br><br>All liens authorized and granted pursuant to the DIP Orders entered by the Bankruptcy Court approving the DIP Facility shall be deemed effective and perfected as of the Petition Date, without the necessity of the execution, filing or recording of security agreements, pledge agreements, control agreements, financing statements or other agreements and no further filing, notice or act will be required to effect such perfection. |
| 19 | Collateral | Consensual (i.e., as confirmed on the record by primed material secured parties appearing at any interim financing hearing and the final financing hearing) and non-consensual with any other secured parties, super-priority senior priming liens and security interests in all prepetition and postpetition assets of Borrowers, subject only to certain permitted prior liens (which permitted liens shall exclude mechanic's liens and any and all other liens securing the repayment of funded pre-petition debt), in addition to super-priority administrative expense claims in favor of DIP Lender for all DIP obligations.<br><br>For the avoidance of doubt, the DIP Lender's liens on the Borrowers' Accounts shall be senior to and prime any prepetition liens of CNB on such Accounts. DIP collateral shall also include (i) all other prepetition and postpetition assets of Borrowers, (ii) all real property and related assets, and (iv) proceeds of avoidance actions. Notwithstanding the foregoing, DIP Lenders' liens on all real property and related assets (excluding Accounts) shall immediately and without further documentation become junior to all prepetition liens on such |

| | Term | Description |
|---|---|---|
| | | real property and related assets. |
| 20 | Maturity Date | All DIP Obligations will be due and payable in full in cash on the earliest date to occur (the "Maturity Date") of (i) 12 months from the Petition Date, (ii) the consummation of any sale of all or substantially all of the Collateral of the Debtors pursuant to Section 363 of the Bankruptcy Code, (iii) if the Final Order has not been entered, the date that is forty-five (45) calendar days after the Petition Date (or such later date as agreed to by the DIP Lender), (iv) the acceleration of the DIP Loans and the termination of the DIP Facility upon the occurrence of an event of default, and (v) the effective date of any Plan of any Borrowers unless otherwise agreed by eCapital (any such date, the "DIP Termination Date"). Principal of, and accrued interest on, the DIP Loans and all other amounts owing to eCapital under the DIP Facility shall be payable on the DIP Termination Date. |
| 21 | Conditions Precedent; R&Ws; EoDs; Covenants | The DIP Loan Documents will contain items customary for facilities of this size, type, and purpose. |
| 22 | Remedies | In addition to other customary terms and remedies, and to such other rights and remedies as are available to the DIP Lender at law or at equity, upon the occurrence and during the continuance of an Event of Default, the DIP Lender, in its sole and absolute discretion may immediately (i) deliver a notice of an Event of Default, and (ii) terminate the DIP Facility and all commitments thereunder. |
| 23 | Indemnification | The DIP Documents shall include an indemnification customary for facilities of this size, type, and purpose. |
| 24 | Governing Law | State of New York |

**eCapital Healthcare Corp.**

By:_____

Name: Steven Silver

Its: Authorized Signatory

4935-5254-9685.4

**Praesum Healthcare Services, LLC** on behalf of itself and the Borrowers


By:_____

Name:

Its:

4935-5254-9685.4

**Exhibit 1**

**Borrowers**

- Praesum Healthcare Services, LLC
- Evolve Recovery Center, LLC
- Evolve Recovery Center at Millbury LLC
- Sunrise Detox Alpharetta, LLC
- Sunrise Detox Brentwood, LLC
- Sunrise Detox Cherry Hill, LLC
- Sunrise Detox Duluth, LLC
- Sunrise Detox III, LLC
- Sunrise Detox Millbury, LLC
- Sunrise Detox Orlando, LLC
- Sunrise Detox Toms River, LLC
- The Counseling Center at Cherry Hill, LLC
- The Counseling Center at Clark, LLC
- The Counseling Center at Duluth, LLC
- The Counseling Center at Fair Lawn, LLC
- The Counseling Center at Freehold, LLC
- The Counseling Center at Middlesex, LLC
- The Counseling Center at Robbinsville, LLC
- The Counseling Center at Roswell, LLC
- The Counseling Center at Roxbury, LLC
- The Counseling Center at Brunswicks, LLC
- The Counseling Center at Toms River, LLC
- The Counseling Center at West Caldwell, LLC
- The Counseling Center at Yorktown Heights, LLC
- Beacon Point Recovery Center LLC
- Sunrise Detoxification Center, LLC
- Sunrise Detox II, LLC
- The Counseling Center at Millbury, LLC

# EXHIBIT B

# Praesum Healthcare

AR Aging by Location (0 to 180 Days)

Date of Service is between 01/01/2024 and 08/31/2025

As of Sep. 12, 2025

| Location | 0-30 Days | 31-60 Days | 61-90 Days | 91-120 Days | 121-150 Days | 151-180 Days | Grand Total |
|---|---|---|---|---|---|---|---|
| Evolve Recovery Center Millbury | $ 648,129 | $ 417,002 | $ 212,814 | $ 70,618 | $ 130,106 | $ 54,320 | $ 1,532,989 |
| Evolve Recovery Center Toms River | $ 188,485 | $ 496,253 | $ 452,350 | $ 594,736 | $ 386,403 | $ 865,919 | $ 2,984,145 |
| Sunrise Detox Cherry Hill | $ 405,474 | $ 357,047 | $ 133,851 | $ 146,928 | $ 148,482 | $ 209,418 | $ 1,401,200 |
| Sunrise Detox Fort Lauderdale | $ 403,605 | $ 590,482 | $ 231,625 | $ 136,596 | $ 8,980 | $ 288,119 | $ 1,659,407 |
| Sunrise Detox Lake Worth | $ 179,463 | $ 113,892 | $ 136,380 | $ 65,604 | $ 1,509 | $ 304,319 | $ 801,167 |
| Sunrise Detox Millbury | $ 1,356,622 | $ 1,471,565 | $ 747,649 | $ 604,436 | $ 387,273 | $ 324,220 | $ 4,891,765 |
| Sunrise Detox Toms River | $ 799,879 | $ 834,134 | $ 380,963 | $ 371,707 | $ 495,488 | $ 1,029,011 | $ 3,911,183 |
| The Counseling Center at Clark | $ 73,737 | $ 25,925 | $ 28,616 | $ 52,255 | $ 67,160 | $ 66,220 | $ 313,913 |
| The Counseling Center at Clark - Cherry Hill | $ 42,212 | $ 20,289 | $ 8,650 | $ 32,933 | $ 37,132 | $ 29,025 | $ 170,241 |
| The Counseling Center at Clark - Middlesex | $ 75,968 | $ 18,858 | $ 17,195 | $ 19,277 | $ 19,676 | $ 31,209 | $ 182,182 |
| The Counseling Center at Clark - Monmouth Junction | $ 30,941 | $ 10,853 | $ 17,049 | $ 28,981 | $ 53,861 | $ 30,528 | $ 172,213 |
| The Counseling Center at Clark - Robbinsville | $ 23,481 | $ 8,275 | $ 4,896 | $ 7,941 | $ 10,697 | $ 19,015 | $ 74,305 |
| The Counseling Center at Clark - Roxbury | $ 77,894 | $ 47,393 | $ 25,050 | $ 34,461 | $ 18,004 | $ 30,042 | $ 232,844 |
| The Counseling Center at Clark - West Caldwell | $ 132,481 | $ 51,154 | $ 25,747 | $ 55,189 | $ 52,036 | $ 70,547 | $ 387,154 |
| The Counseling Center at Duluth | $ 34,841 | $ 43,781 | $ 30,533 | $ 32,929 | $ 38,956 | $ 22,892 | $ 203,932 |
| The Counseling Center at Fair Lawn | $ 288,654 | $ 192,683 | $ 128,697 | $ 186,209 | $ 345,591 | $ 241,819 | $ 1,383,655 |
| The Counseling Center at Freehold | $ 144,205 | $ 61,458 | $ 55,840 | $ 68,139 | $ 89,515 | $ 97,264 | $ 516,421 |
| The Counseling Center at Millbury | $ 120,158 | $ 105,657 | $ 49,188 | $ 31,182 | $ 27,102 | $ 51,831 | $ 385,119 |
| The Counseling Center at Roswell | $ - | $ 625 | $ 2,100 | $ 3,070 | $ 2,700 | $ 2,800 | $ 11,295 |
| The Counseling Center at Toms River | $ 364,178 | $ 226,587 | $ 182,898 | $ 231,301 | $ 246,742 | $ 300,346 | $ 1,552,052 |
| The Counseling Center at Yorktown Heights | $ 89,119 | $ 47,648 | $ 41,024 | $ 41,832 | $ 27,923 | $ 54,903 | $ 302,448 |
| **Grand Total** | $ 5,479,527 | $ 5,141,561 | $ 2,913,116 | $ 2,816,324 | $ 2,595,335 | $ 4,123,767 | $ 23,069,630 |

**Praesum Healthcare**

AR Aging by Location (0 to 180 Days)

Date of Service is between 01/01/2024 and 08/31/2025

As of Sep. 22, 2025

| Location | 0-30 Days | 31-60 Days | 61-90 Days | 91-120 Days | 121-150 Days | 151-180 Days | Grand Total |
|---|---:|---:|---:|---:|---:|---:|---:|
| Evolve Recovery Center Stirling | $ 240,210 | $ 386,103 | $ 199,886 | $ 181,528 | $ 204,910 | $ 224,070 | $ 1,436,706 |
| Sunrise Detox Alpharetta | $ 317,475 | $ 277,813 | $ 137,070 | $ 98,502 | $ 128,271 | $ 197,596 | $ 1,156,728 |
| Sunrise Detox Brentwood | $ 647,570 | $ 263,670 | $ 312,184 | $ 186,502 | $ 336,270 | $ 306,498 | $ 2,052,694 |
| Sunrise Detox Duluth | $ 209,745 | $ 270,204 | $ 168,322 | $ 132,940 | $ 69,469 | $ 186,241 | $ 1,036,921 |
| Sunrise Detox Orlando | $ 444,439 | $ 588,158 | $ 525,570 | $ 257,909 | $ 256,715 | $ 495,884 | $ 2,568,675 |
| **Grand Total** | **$ 1,859,439** | **$ 1,785,948** | **$ 1,343,032** | **$ 857,381** | **$ 995,635** | **$ 1,410,289** | **$ 8,251,725** |