**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:

Praesum Healthcare Services, LLC,[1] (Jointly Administered) — Case No. 25-19335-EPK, Chapter 11

Debtors.
_____________________________/

**MANDI CARE, LLC'S OBJECTION TO APPLICATION OF CORONIS HEALTH I, LLC FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM**

Mandi Care, LLC ("**Mandi Care**"),[2] purchaser of the assets of the estates of the above-captioned Debtors (the "**Debtors**"), files this objection (the "**Objection**") to the *Application of Coronis Health I, LLC for Allowance and Payment of Administrative Expense Claim* [Dkt. No. 1212] (the "**Application**") filed by Coronis Health I, LLC ("**Coronis**"). In support of the Objection, Mandi Care respectfully represents as follows:

---

[1] The 28 Debtors are: (1) Praesum Healthcare Services, LLC, Case No. 25-19335-EPK; (2) Evolve Recovery Center, LLC, Case No. 25-19336-EPK; (3) Evolve Recovery Center at Millbury LLC, Case No. 25-19340-EPK; (4) Sunrise Detox Alpharetta, LLC, Case No. 25-19343-EPK; (5) Sunrise Detox Brentwood, LLC, Case No. 25-19346-EPK; (6) Sunrise Detox Cherry Hill, LLC, Case No. 25-19348-EPK; (7) Sunrise Detox Duluth, LLC, Case No. 25-19356-EPK; (8) Sunrise Detox III, LLC, Case No. 25-19359-EPK; (9) Sunrise Detox Millbury, LLC, Case No. 25-19362-EPK; (10) Sunrise Detox Orlando, LLC, Case No. 25-19363-EPK; (11) Sunrise Detox Toms River, LLC, Case No. 25- 19365-EPK; (12) The Counseling Center at Cherry Hill, LLC, Case No. 25-19366-EPK; (13) The Counseling Center at Clark, LLC, Case No. 25-19367-EPK; (14) The Counseling Center at Duluth, LLC, Case No. 25-19368-EPK; (15) The Counseling Center at Fair Lawn, LLC, Case No. 25-19337-EPK; (16) The Counseling Center at Freehold, LLC, Case No. 25-19339-EPK; (17) The Counseling Center at Middlesex, LLC, Case No. 25-19341-EPK; (18) The Counseling Center at Robbinsville, LLC, Case No. 25-19342-EPK; (19) The Counseling Center at Roswell, LLC, Case No. 25-19344-EPK; (20) The Counseling Center at Roxbury, LLC, Case No. 25-19345-EPK; (21) The Counseling Center at Brunswicks, LLC, Case No. 25-19347-EPK; (22) The Counseling Center at Toms River, LLC, Case No. 25-19349-EPK; (23) The Counseling Center at West Caldwell, LLC, Case No. 25-19351-EPK; (24) The Counseling Center at Yorktown Heights, LLC, Case No. 25-19352-EPK; (25) Beacon Point Recovery Center LLC, Case No. 25-19354-EPK; (26) Sunrise Detoxification Center, LLC, Case No. 25-19355-EPK; (27) Sunrise Detox II, LLC, Case No. 25-19357-EPK; and (28) The Counseling Center at Millbury, LLC, Case No. 25-19358-EPK.

[2] Mandi Care is formerly known as, and has previously done business as, Mayfair / Mandi Group et al., The Mandi Group, L.L.C., and Mandi Mayfair Group LLC.

## PRELIMINARY STATEMENT

1. In January 2026, Mandi Care purchased substantially all of the Debtors' assets at auction and, since that time, has been operating the Debtors' former Facilities[3] pursuant to an IMA entered between Mandi Care and the Debtors, acting by and through the Trustee. Mandi Care's APA with the Debtors makes clear that Mandi Care is not responsible for any liabilities or obligations of the Debtors other than those expressly assumed pursuant to the parties' APA. Additionally, among other things, the IMA provides that Mandi Care has the power to manage all aspects of billing and collection and that Mandi Care is only responsible for those expenses of the Facilities that are attributable to the operation thereof.

2. Prior to the sale to Mandi Care, and prior to the appointment of the Trustee, the Debtors entered into a Contract with Coronis for revenue cycle management ("**RCM**") services. The Contract was approved by the Court, and the Court's order approving the same specified that Coronis would have an administrative expense claim for any amounts due to Coronis under the Contract. Following the sale, the Trustee at no point assumed or assigned the Contract to Mandi Care.

3. Upon Mandi Care's takeover of the Facilities' operations on January 24, 2026, it quickly became clear that Coronis's performance under the Contract and provision of services were woefully deficient. While Mandi Care attempted to help Coronis improve its performance, these attempts were unsuccessful, and Mandi Care made the decision to seek an alternative provider of RCM services. To that end, on March 10, 2026, Mandi Care instructed Coronis to cease submitting claims on behalf of the Facilities and locked Coronis out of the Facilities' billing system. Following this lockout, on April 23, 2026, Mandi Care delivered a Notice of Termination to Coronis detailing

[3] Capitalized terms not otherwise defined in this Preliminary Statement shall have the meanings given them elsewhere in the Objection.

Coronis's breaches of the Contract. Coronis did not cure its breaches, and the Contract thus terminated for cause no later than sixty days later, on June 22, 2026.

4. Coronis now seeks an administrative expense claim in the total amount of $1,558,925.82 (the "**Claim**"), comprised of $670,635.30 in invoiced amounts for services allegedly performed and provided to the Debtors and $888,290.52 in estimated amounts for postpetition services following the termination of services by Mandi Care. Coronis has requested that such amounts be paid either by the Debtors' estates or by Mandi Care directly.

5. However, Mandi Care cannot be held liable directly to Coronis. As is made clear in the Court's Sale Order and the APA, Mandi Care is not responsible for the liabilities and obligations of the Debtors except for those that it has expressly assumed. The Contract with Coronis was never assumed and assigned to Mandi Care, and thus Coronis's only recourse is an administrative expense claim against the Debtors' estates and not against Mandi Care directly.

6. Further, pursuant to the IMA, Mandi Care is only responsible for those expenses of the Facilities that are attributable to the operation of the Facilities. Coronis only performed services on behalf of the Facilities while under Mandi Care's management during the period from January 24, 2026, when Mandi Care took over management of the Facilities, until March 10, 2026, when Mandi Care locked Coronis out of the Facilities' billing system and instructed Coronis to cease submitting claims on the Facilities' behalf. No allowed amount of Coronis's Claim that is attributable to the period following March 10, 2026, was necessary to or in any way related to operation of the Facilities and thus cannot be deemed an operating expense for which Mandi Care is responsible.

7. Lastly, Mandi Care suffered damages as a result of Coronis's uncured, material breaches of the Contract. As such, any allowed amount of Coronis's Claim should be reduced, if not eliminated, to the extent of Mandi Care's damages. Mandi Care reserves the right to assert Coronis's

breach of the Contract as an affirmative claim or counterclaim and reserves the right to produce evidence of the amount of its damages at an evidentiary hearing on Coronis's Application.

8. For these reasons, Mandi Care requests that the Court: (i) find that Mandi Care is not liable to Coronis directly and refrain from entering an order requiring Mandi Care to pay Coronis's Claim directly to Coronis; (ii) find that Mandi Care is liable to the Debtors' estates only to the extent that Coronis's Claim is attributable to operating expenses of the Facilities, and that any such liability is limited to services actually performed by Coronis on behalf of Mandi Care between January 24, 2026, and March 10, 2026; and (iii) reduce or eliminate Coronis's Claim to the extent of the damages suffered by Mandi Care on account of Coronis's material breaches of the Contract in an amount to be proven at an evidentiary hearing.

## BACKGROUND

### A. General Background.

9. On August 14, 2025 (the "**Petition Date**"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Florida, West Palm Beach Division (the "**Court**").

10. On January 15, 2026, the Court entered its *Order Directing Appointment of Chapter 11 Trustee* [Dkt. No. 501].

11. On January 20, 2026, the United States Trustee for Region 21 filed its *Amended Notice of Appointment of Chapter 11 Trustee and Setting Bond* [Dkt. No. 522] appointing the Trustee.

12. On January 21, 2026, the Court entered its *Order Approving Appointment of Chapter 11 Trustee* [Dkt. No. 529] and appointed Robert C. Furr as Chapter 11 Trustee (the "**Trustee**") for the Debtors' estates.

## B. The Sale Order and Related Transaction Documents.

13. On January 19, 2026, this Court entered its *Order (I) Authorizing the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances and (II) Granting Related Relief* [Dkt. No. 516] (the "**Sale Order**") approving the sale of the Debtors' assets to Mayfair/Mandi Group et al., which subsequently formed Mandi Care to be the legal purchaser of the Debtors' assets.

14. Among other things, the Sale Order provides:

i. "The sale and transfer of the Purchased Assets to the Buyer, including the assumption by the Debtors and assignment, transfer, or sale to the Buyer of any executory contracts or unexpired leases, . . . will not make the Buyer a successor of any Debtor nor subject the Buyer to any liability (including any successor liability) with respect to the operation of the Debtors' businesses prior to the closing of the Sale Transaction (the "Closing") or by reason of such transfer." Sale Order ¶ J.

ii. The transfer of the Debtors' assets shall "be free and clear of all Claims in accordance with Section 363(f) of the Bankruptcy Code . . . ." *Id.* ¶ 10.

iii. "Except as otherwise expressly provided in the Letter of Intent, the other Transaction, or in this Order, all persons or entities (and their respective successors and assigns) are hereby forever barred, estopped and permanently enjoined from asserting or pursuing such Claims against the Buyer, its affiliates, successors or assigns, its property or the Purchased Assets . . . (other than an Assumed Liability) . . . ." *Id.* ¶ 13.

iv. "This Order (a) shall be effective as a determination that, as of the Closing, all Claims against the Debtors or the Purchased Assets have been unconditionally released, discharged and terminated as to the Buyer and the Purchased Assets, . . . and (b) is and shall be binding upon and govern the acts of all persons and entities . . . ." *Id.* ¶ 14.

v. "Except as may be expressly set forth in the definitive asset purchase agreement, the Buyer and its successors and assigns shall have no liability for any Claim, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether derivatively, vicariously, as a transferee or successor or otherwise, of any kind, nature or character whatsoever, by reason of any theory of law or equity." *Id.* ¶ 16.

vi. "[T]he Buyer has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates, except with respect to the Assumed Liabilities." *Id.* ¶ 19.

vii. "The terms and provisions of this Order shall be binding in all respects upon the Debtors, their estates, their creditors, any affected third parties, . . . all holders of any claims, whether known or unknown, against the Debtors, any holders of Claims against or on all or any portion of the Purchased Assets, including, but not limited to, all contract counterparties, . . . and any trustees, . . . if any, subsequently appointed in these Chapter 11 Cases . . . ." *Id.* ¶ 23.

viii. "Any interim management agreement or other similar document executed as part of the Sale Transaction shall provide that the Buyer will . . . [be] responsible for any operational costs associated with the Debtors' businesses incurred on or after January 24, 2026, as of 12:01 a.m. (prevailing Eastern time) . . . ."

15. On January 23, 2026, Mandi Care and the Debtor, by and through the Trustee, entered into the Interim Management Agreement (the "**IMA**") to govern the relationship between Mandi Care and the Debtors' estates while Mandi Care applies for and awaits receipt of the necessary governmental approvals to allow for Mandi Care's ongoing operation of the facilities purchased from the Debtors. A true and correct copy of the IMA is attached hereto as **<u>Exhibit A</u>**.

16. The IMA provides that Mandi Care "shall manage all aspects of the operation of the Facilities, including but not limited to . . .vendor management, billing, [and] collection . . . ." IMA § I. Further, Mandi Care "shall bill and collect for all goods and services provided at the Facilities . . . . Nothing herein shall preclude [Mandi Care] from delegating to a third party a portion of the accounting duties provided for in this section." *Id.* § I.E.

17. The IMA also provides that, "[i]n accordance with Section VIII(B), [Mandi Care] shall pay from the Facility Funds all of the expenses of the Facilities including . . . vendors . . . [and] any other capital and operating expenses of the Facilities." *Id.* Section VIII(B) specifies that Mandi Care "shall utilize the Facility Funds to pay . . . the accounts payable and other expenses during the Term **<u>that are attributable to the operation of the Facilities</u>** on and after the Effective Date . . . ." *Id.* § VIII.B. (emphasis added).

18. On February 18, 2026, Mandi Care (then doing business as Mandi Mayfair Group LLC) and the Debtors, by and through the Trustee, entered into the Asset Purchase Agreement (the

"**APA**") to consummate the sale of the Debtors' assets to Mandi Care. A true and correct copy of the APA is attached hereto as **Exhibit B**.

19. The APA provides that Mandi Care shall only assume certain specified liabilities (the "**Assumed Liabilities**"):

> (A) any and all Liabilities arising under the Purchaser Assumed Agreements[4] in each case solely to the extent arising from performance that first comes due after the applicable Facility Transfer Effective Date . . . ;
>
> (B) all costs to cure all defaults under the Purchaser Assumed Agreements as determined by the Bankruptcy Court pursuant to Section 365(b) of the Bankruptcy Code (the "Cure Costs");
>
> (C) any amounts that become due and payable by Purchaser or its Affiliates under the terms and conditions under the Interim Management Agreement . . . ; and
>
> (D) any Transfer Taxes arising in connection with the transactions contemplated by this Agreement.

APA § 1.04. With the exception of these Assumed Liabilities, Mandi Care "shall not assume any indebtedness, obligations or Liabilities of the Sellers whatsoever, whether fixed or contingent, known or unknown, matured or unmatured, accrued or unaccrued (collectively, 'Excluded Liabilities')." *Id.* § 1.05.

**C. The Debtors' Contract with Coronis.**

20. Following the Petition Date, but prior to Mandi Care's purchase of the Debtors' assets and prior to the appointment of the Trustee, the Debtors entered into three related contracts with Coronis for the provision of RCM services: (i) a Master Services Agreement effective as of October

---

[4] The "Purchaser Assumed Agreements" are those contracts of the Debtors that are:

> (x) assignable pursuant to Sections 363 and 365 of the Bankruptcy Code and applicable Law, and (y) designated by [Mandi Care] on or before the Facility Transfer Effective Date and such assignment and assumption is approved by the Bankruptcy Court, all rights of the such Seller in, to and under all admissions, occupancy, treatment, and similar written agreements entered into in the Ordinary Course of Business with patients and customers of the applicable Facility, and any amendments or modifications thereof, as described on Schedule 1.02(B)(5), as may be amended by Purchaser from time to time as provided herein . . . .

APA § 1.02(B)(5).

10, 2025 (the "**MSA**"); (ii) a Behavioral Health SOW #1 – Revenue Cycle Management Services contract with an effective date of October 10, 2025, and a Go Live Date of November 9, 2025 (the "**SOW**"); and (iii) a Business Associate Agreement effective as of October 10, 2025 (the "**BAA**" and, collectively with the MSA and the SOW, the "**Contract**"). The Contract is attached to the Debtors' *Motion to Approve Contracts for Revenue Cycle Services* [Dkt. No. 155] (the "**Contract Motion**") at Exhibit 1.

21. The Contract term began on October 10, 2025, and had an initial term of one year. MSA § 3. Either party has the right to terminate the Contract for cause if the other party "materially breaches or is in default of any material obligation hereunder" following notice of "at least sixty (60) days in which to cure the [breach]." *Id.* Coronis also may terminate the Contract at any time, without cause, upon ninety days prior written notice. *Id.* § 4.1.

22. On October 14, 2025, the Debtors filed Contract Motion. On December 4, 2025, the Court entered its *Order Granting Motion to Approve Contracts for Revenue Cycle Services* [Dkt. No. 331] (the "**Contract Order**").

23. The Contract Order provides that Coronis shall have an administrative expense claim for amounts due under the Contracts. Contract Order ¶ 4.

24. Per the terms of the IMA, Mandi Care took over management of the Debtors' facilities (the "**Facilities**") on January 24, 2026. *See* IMA § IV. Following Mandi Care's takeover of management of the facilities, Mandi Care noticed serious deficiencies in Coronis's billing practices and that Coronis was using inexperienced teams to perform their billing for the Facilities. Accordingly, Mandi Care brought on assistance to help Coronis remedy these deficiencies. Mandi Care's supplemental assistance led to a significant spike in collections for February 2026—from $1,636,106.22 in January to $2,827,084.59 in February, an increase of approximately 73%.

25. Despite this drastic improvement as a result of Mandi Care's assistance, Coronis was still collecting at rates insufficient to cover the Facilities' monthly costs. Mandi Care requested access to Coronis's billing platform to correct Coronis's ongoing errors with no changes to the Contract's payment terms. Coronis refused.

26. Faced with the prospect of leaving significant revenue on the table in the form of uncollected bills, Mandi Care elected to cease working with Coronis and to hire a separate provider of RCM services. Accordingly, on March 10, 2026, Mandi Care locked Coronis out of the Facilities' billing systems and instructed Coronis to cease submitting claims.

27. Subsequently, on April 23, 2026, Mandi Care delivered to Coronis a notice of termination (the "**Notice of Termination**") informing Coronis of a number of material breaches of the Contract, including: (i) billing certain claims as professional claims when they should have been billed on institutional claim forms, even after having been instructed to use the proper forms; (ii) failing to timely file claims, which failure resulted in denial of such claims, including at least 350 claims that were billed after ninety days, the cutoff for timely filing for most payors; (iii) 245 line items improperly billed to Horizon NJ Health as institutional; and (iv) 7,874 line items billed over thirty days after the last date of service on the claim. A true and correct copy of the Notice of Termination is attached hereto as **Exhibit C**.

28. As a result of Coronis's material breaches of the Contract, Mandi Care suffered substantial damages in the form of lost revenue and uncollected billings.

29. The Notice of Termination stated, and Mandi Care maintains, that a series of emails attached thereto, delivered on March 10, 2026, from Mandi Care to Coronis, constituted notice of termination for cause, and that the Contract thus terminated, for cause, on May 9, 2026.

30. In the alternative, in accordance with the Contract, the Notice of Termination detailed with particularity Coronis's breaches, which were not timely cured within sixty days, and thus the Contract terminated for cause no later than June 22, 2026.

## OBJECTION

31. Coronis requests an administrative expense claim in the total amount of $1,558,925.82 (the "**Claim**"), comprised of $670,635.30 in invoiced amounts for services allegedly performed and provided to the Debtors and $888,290.52 in estimated amounts for postpetition services following the termination of services by Mandi Care. Coronis's Claim should not be allowed in its entirety. In any case, Mandi Care is not directly liable to Coronis for any amount of the Claim, and it can only be held liable to the Debtors' estates to the extent that the Claim relates to expenses that are attributable to the operation of the Facilities.

### *A. Mandi Care is not directly liable to Coronis.*

32. The Sale Order makes clear that Mandi Care's purchase of the Debtors' assets was free and clear of all claims and that Mandi Care "has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates, except with respect to the Assumed Liabilities." Sale Order ¶¶ 10, 19. The Debtors' Contract with Coronis was not among the Assumed Liabilities as defined in the APA. *See* APA § 1.04. Additionally, at no point has the Trustee assumed or assigned the Contract to Mandi Care, and in fact the Notice of Termination forecloses any possibility that the Contract has been assumed and assigned to Mandi Care.[5] Accordingly, per the terms of the Sale Order and the APA, Mandi Care cannot be held liable for the Contract, which is a liability of the Debtors that was not assumed by Mandi Care.

---

[5] Arguably, because the Contract is a postpetition contract, it is not an executory contract subject to section 365 of the Bankruptcy Code such that it even could be assumed and assigned.

33. Furthermore, the Contract Order makes clear that Coronis shall have an administrative expense claim for amounts due under the Contract. Contract Order ¶ 4. As such, any allowed amount of Coronis's Claim is a direct liability of the Debtors' estates and not of Mandi Care.

### ***B. Mandi Care is only liable to the Debtors' estates to the extent the Claim is attributable to the operation of the Facilities.***

34. While Mandi Care is not liable to Coronis directly, it can be liable to the Debtors' estates under the IMA, but only for expenses "that are attributable to the operation of the Facilities on and after the Effective Date . . . ." IMA § VIII.B.

35. The IMA became effective on January 24, 2026, and Mandi Care locked Coronis out of the Facilities' billing system and instructed Coronis not to submit any more claims on March 10, 2026. Coronis did not submit any more claims on Mandi Care's or the Facilities' behalf following March 10, 2026. No amount of the Claim that is attributable to the period after March 10 can in any way be deemed an operating expense of the Facilities, as Coronis no longer performed services in connection with, or necessary to, the operation of the Facilities.

36. Coronis seeks amounts apparently relating to services performed in December 2025, April 2026, May 2026, and June 2026, totaling $214,573.75, all of which either fall entirely before the Effective Date of the IMA or after Mandi Care locked Coronis out of the billing system.[6] None of these amounts can be considered operating expenses for which Mandi Care would be liable under the IMA. Additionally, only a portion of the invoices relating to January 2026 and March 2026 would be attributable to the period between January 24, 2026, and March 10, 2026.

37. Additionally, Coronis seeks "an estimated amount of $888,290.52 for the 90-day termination period from April 23, 2026 through July 22, 2026." Application ¶ 33.

---

[6] Coronis attached only a summary of its invoices to the Application, and this summary does not include detail as to precisely when the invoiced services were performed. As such, it is difficult, if not impossible, for Mandi Care to determine the applicable dates of service for each of the listed invoices.

38. As an initial matter, Coronis provides no support for this number and merely states that this estimate was "calculated based on the average billing amount for the period of November 2025 through March 2026 less amounts actually known to be due and calculated on the collections that occurred following the Lockout." *Id.* ¶ 21.

39. Furthermore, Coronis failed to cure the breaches set forth in the Notice of Termination delivered on April 23, 2026, and thus the Contract terminated no later than sixty days after delivery of the Notice of Termination, on June 22, 2026. As such, Coronis has no entitlement to any amounts attributable to the period from June 22, 2026, through July 22, 2026.

40. Lastly, even if the Court allows a portion or all of this estimated amount, the entire amount relates to the period after March 10, 2026, when Coronis was locked out of the Facilities' billing system and instructed to stop submitting claims. This estimated amount thus does not relate to actual services performed by Coronis, and in no way is this amount attributable to operation of the Facilities. Thus, even should the Court allow some or all of this amount as an administrative expense, Mandi Care is not liable to the Debtors' estates for these amounts.

41. As further evidence that the IMA does not contemplate that Mandi Care should be liable for Coronis's Contract, the IMA in multiple places specifies that Mandi Care may manage all aspects of billing and collections for the Facilities. *See IMA* §§ I ("[Mandi Care] shall manage all aspects of operation of the Facilities, including but not limited to . . . billing [and] collection . . . ."); I.E. ("[Mandi Care] shall bill and collect for all goods and services provided at the facilities," and "[n]othing herein shall preclude [Mandi Care] from delegating to a third party a portion of the accounting duties provided for in this section."); I.J. ("[Mandi Care] shall issue bills and collect accounts and monies owed for goods and services furnished by the Facilities . . . ."). These provisions make it clear that Mandi Care had full control over the Facilities' billing and collections operations, including as to the delegation of those operations to a third party. Mandi Care was thus fully within

its rights under the IMA to terminate the Contract with Coronis. Further, per the express terms of the Sale Order and the APA, Mandi Care is not responsible for any of the Debtors' obligations or liabilities other than the Assumed Liabilities, and the Contract is not an Assumed Liability. *See* Sale Order ¶ 19; APA §§ 1.04, 1.05.

42. Thus, the APA and the IMA serve to limit Mandi Care's liability with respect to the Debtors' contract with Coronis to those amounts attributable to the operation of the Facilities, i.e., services actually performed by Coronis to the Facilities during the term of the IMA, from January 24, 2026, through March 10, 2026.

### *C. Coronis's Claim should be reduced by the damages suffered by Mandi Care on account of Coronis's breaches of the Contract*.

43. As set forth in the Notice of Termination and in multiple communications between Mandi Care and Coronis, Coronis's deficient performance under the Contract constituted a material breach thereof. Coronis's breaches include, but are not limited to: (i) billing certain claims as professional claims when they should have been billed on institutional claim forms, even after having been instructed to use the proper forms; (ii) failing to timely file claims, which failure resulted in denial of such claims, including at least 350 claims that were billed after ninety days, the cutoff for timely filing for most payors; (iii) 245 line items improperly billed to Horizon NJ Health as institutional; and (iv) 7,874 line items billed over thirty days after the last date of service on the claim. Coronis's Claim should be reduced, if not entirely eliminated, to the extent of the damages suffered by Mandi Care due to Coronis's material breaches of the Contract. Mandi Care reserves the right to assert a claim or counterclaim for breach of the Contract and to submit evidence, including by declaration or by witness testimony, of the amount of its damages.

**WHEREFORE**, Mandi Care requests that the Court: (i) find that Mandi Care is not liable to Coronis directly and refrain from entering an order requiring Mandi Care to pay Coronis's Claim directly to Coronis; (ii) find that Mandi Care is liable to the Debtors' estates only to the extent that

Coronis's Claim is attributable to operating expenses of the Facilities, and that any such liability is limited to services actually performed by Coronis on behalf of Mandi Care between January 24, 2026, and March 10, 2026; and (iii) reduce or eliminate Coronis's Claim to the extent of the damages suffered by Mandi Care on account of Coronis's material breaches of the Contract in an amount to be proven at an evidentiary hearing.

Dated: September 23, 2026

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

By: /s/ *Joaquin J. Alemany*_________
Joaquin J. Alemany, Esq.
Florida Bar No. 662380
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Telephone: 305.789.7763
Facsimile: 305.789.7799
Email: joaquin.alemany@hklaw.com

Tyler N. Layne, Esq.
(admitted *pro hac vice)*
150 Third Avenue South, Suite 2800
Nashville, TN 37201
Telephone: 615.244.6380
Email: tyler.layne@hklaw.com

Nicholas R. Miller, Esq.
(admitted *pro hac vice*)
98 San Jacinto Boulevard, Suite 1900
Austin, TX 78701
Telephone: 512.685.6457
Email: nick.miller@hklaw.com

*Attorneys for Mandi Care, LLC*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that, on September 23, 2026, a true and correct copy of the foregoing was furnished via Notice of Electronic Filing by CM/ECF to all parties registered to receive such service.

By: /s/ *Joaquin J. Alemany*________
Joaquin J. Alemany, Esq.