***Execution Copy***

# INTERIM MANAGEMENT AGREEMENT

This Interim Management Agreement (this "**Agreement**") is made and entered into as of January 23, 2026 (the "**Execution Date**"), by and between The Mandi Group, L.L.C., a New Jersey limited liability company ("**Manager**"), and Praesum Health, LLC, a Delaware limited liability company ("**Operator**"), on behalf of each of its subsidiaries identified on the attached Exhibit A (collectively, the "**Subsidiaries**" and collectively with the Operator, the "**Operating Entities**"). Operator and Manager may be referred to herein as a "Party" and collectively as, the "Parties."

## RECITALS:

A. Each Subsidiary currently holds the license (the "**Current License**") to operate that certain drug and alcohol treatment facility listed opposite its name on Exhibit A (collectively, the "**Facilities**" and each, a "**Facility**").

B. Manager and/or its affiliate and the Operating Entities are expected to be parties to a certain Asset Purchase Agreement, dated on or around February 9, 2026 (the "**APA**"), pursuant to which the Operating Entities shall transfer to Manager, among other things, the business operations of the Facilities and the operational assets described therein.

C. Manager or its affiliate has applied for or will apply for the governmental approvals to allow for the operation of the Facilities in Manager's or its affiliate's name (collectively, the "**New Licenses**"), as contemplated by the APA.

D. In anticipation of Manager's receipt of the New Licenses, Operator (on behalf of its Subsidiaries) desires to engage Manager as the manager of the Facilities, to provide to, or on behalf of, the Operating Entities, the services provided for herein with respect to the Facilities during the Term (as defined below).

E. Manager is willing to manage the Facilities on behalf of the Operating Entities during the Term.

NOW THEREFORE, in consideration of the foregoing premises and the mutual covenants herein contained, IT IS AGREED AS FOLLOWS:

I. Responsibilities of Manager: Operator hereby engages Manager, and Manager hereby accepts such engagement and agrees to provide those certain services as more fully described herein to the Operating Entities in connection with the operation of the Facilities, upon the terms and conditions set forth in this Agreement. By entering into this Agreement, Operator does not delegate to Manager any powers, duties or responsibilities which it is prohibited by law from delegating. Operator also retains such other authority as shall not have been expressly delegated to Manager pursuant to this Agreement. Subject to the foregoing, Manager shall manage all aspects of the operation of the Facilities, including but not limited to, the provision of services to residents, marketing, human resources management, vendor management, billing, collection and general on-site administration, and each of the following services:

A. Operational Policies and Forms: Manager shall implement operational policies and procedures as it deems necessary to ensure the establishment and maintenance of

operational standards appropriate for the nature of the Facilities. However, the Operating Entities retain independent authority for the adoption and enforcement of policies affecting the delivery of services, including but not limited to all health care services.

B. Charges: Manager shall provide guidance to the Operating Entities with respect to the schedules of recommended charges, including any and all special charges, for services rendered to the residents at the Facilities.

C. Information: Manager shall develop any informational material, mass media releases, and other related publicity materials, which it deems necessary for the operation of the Facilities.

D. Regulatory Compliance: Manager, with the assistance of the Operating Entities if requested by Manager, shall use its commercially reasonable efforts to assist the Operating Entities to maintain all licenses, permits, qualifications and approvals from any applicable governmental or regulatory authority for the operation of the Facilities, shall assist the Operating Entities with respect to the operation of the Facilities in full compliance with all applicable laws and regulations and shall comply with all such laws and regulations in performing its obligations under this Agreement; provided, however, nothing herein shall be construed as relieving the applicable Operating Entity, as the licensed operator of such Facility, from liability in the event that the operations at such Facility fail to comply with applicable law.

E. Accounting: Manager shall provide back office and accounting support to the Facilities. Manager shall bill and collect for all goods and services provided at the Facilities and, until such time as Manager establishes New Facility Bank Accounts pursuant to Section I(M), deposit the same in the bank account(s) described in Exhibit B hereto (collectively, the "**Current Facility Bank Account**") to be used to pay the operating expenses of the Facilities that relate to operations of the Facilities on and after the Effective Date. All accounting procedures and systems utilized in providing said support shall be in accordance with generally accepted accounting principles and shall not materially distort income or loss. In addition, Manager shall cause all local, state and federal taxes to be timely paid or contested, as appropriate. The taxes shall be deemed to be operating expenses of the Facilities. Nothing herein shall preclude Manager from delegating to a third party a portion of the accounting duties provided for in this section. In accordance with Section VIII(B), Manager shall pay from the Facility Funds all of the expenses of the Facilities including, but not limited to, all rent (including without limitation "Base Rent" and "Additional Rent") due under each Facility's lease agreement (collectively, the "**Leases**"), and all payroll and employee benefits, supplies, equipment, vendors, utilities, any other capital and operating expenses of the Facilities. For the avoidance of doubt, Manager shall be entitled to use all of the Operating Entities' provider numbers and provider agreements for purposes of billing for services on behalf of the Operating Entities during the Term in accordance with the provisions of the APA. The Operating Entities shall ensure that, after the closing under the APA, the Manager has sole signing authority with respect to the Current Facility Bank Account.

F. Reports and Records: Manager shall prepare and provide to the Operator any reasonable operational information which may from time to time be specifically requested by Operator, including any information needed to assist Operator in completing its tax returns. The

Operating Entities shall assist Manager in complying with all applicable laws to maintain the Current License.

G. Personnel: Manager and Operator acknowledge and agree that Manager is hereby delegated the full power and authority to hire and fire the personnel at the Facilities, regardless of whether such persons are employed by the Operating Entities or by the Manager. In order to assist Manager in fulfilling its obligations with respect to the employees of the Facilities, Operator also hereby delegates to Manager the authority to recruit, train, promote, direct and discipline personnel of the Facilities; establish salary levels, personnel policies and employee benefits; and establish employee performance standards, all as needed during the Term to ensure the efficient operation of all departments within and services offered by the Facilities. All of the foregoing obligations shall be undertaken in accordance with the operating budgets of the Facilities, the policies and procedures of the Facilities and all applicable state and federal laws.

H. Supplies and Equipment: Manager shall purchase supplies and equipment (capital and non-capital) needed to operate the Facilities. In purchasing said supplies and equipment, if possible, Manager may take advantage of any national or group purchasing agreements to which Manager may be a party.

I. Legal Proceedings: Manager shall, through its legal counsel, coordinate all legal matters and proceedings with Operator's counsel.

J. Collection of Accounts: Manager shall issue bills and collect accounts and monies owed for goods and services furnished by the Facilities, including, but not limited to, enforcing the rights of the Operating Entities and the Facilities as creditor under any contract or in connection with the rendering of any services; provided, however, that any expenses incurred by Manager in so doing shall be treated as operating expenses of the Facilities, which shall be payable from the Facility Funds. Any actions taken by Manager to collect said accounts receivable shall be in accordance with the applicable laws, rules and regulations governing the collection of accounts receivable. Any amounts collected by Manager shall be deposited in the Current Facility Bank Account (subject to Section I(M) of this Agreement) and applied toward the payment of the expenses associated with the operation of the Facilities.

K. Compliance with the Lease. Manager shall take such other actions as may be reasonably requested by Operator to enable the Operating Entities to comply with their obligations under the Leases.

L. Admission Agreements and Contracts. The Manager shall prepare all admission agreements for execution by residents. The applicable Operating Entity's name (and not Manager's) shall appear on all admission agreements and disclosures.

M. New Facility Bank Accounts. Notwithstanding anything in this Agreement to the contrary, Manager shall have the right to direct and manage any changes to the current structure for the Current Facility Bank Account in a manner consistent with the obligations of Manager under this Agreement. Manager, may not, however: (i) make any changes to any account structure with respect to any bank or deposit account that receives reimbursements from Medicare or Medicaid (or from any other governmental payor) for goods or services sold or provided at the

Facilities (a "**Reimbursement Account**" (which may include the Current Facility Bank Account, as applicable)) in a manner that is inconsistent with federal laws or regulations), or (ii) make any other changes to any bank or deposit account that would be inconsistent with federal laws or regulations, including Federal laws, rules and regulations prohibiting reassignment of deposit accounts. Notwithstanding the foregoing, after the closing under the APA, Manager shall have the right to provide for regular sweeps of cash from any Reimbursement Account to new deposit or bank accounts that are under the control and direction of Manager ("**New Facility Bank Accounts**", and together with the Current Facility Bank Account and Reimbursement Account, the "**Facility Bank Accounts**"). Subject to the restrictions contained in this Section, Manager may also deposit in the New Facility Bank Accounts any other revenues that relate to operations of the Facilities on and after the Effective Date.

II. Insurance: Manager shall arrange for and maintain all necessary and proper hazard insurance covering the Facilities, the furniture, fixtures, and equipment situated thereon, and all necessary and proper malpractice and public liability insurance for the protection of Manager, Landlord and Operator and their officers, partners, agents and employees. All employee health and worker's compensation insurance provided to the employees of the Facilities shall be administered by Manager. Manager shall be added as an additional insured on the Operating Entities' liability insurance.

III. Proprietary Interest: The systems, methods, procedures and controls employed by Manager and any written materials or brochures developed by Manager to document the same are to remain the property of Manager and are not, at any time during or after the Term, to be utilized, distributed, copied or otherwise employed or acquired by the Operating Entities, except as authorized by Manager.

IV. Term of Agreement: The term of this Agreement (the "**Term**") shall commence at 12:01 AM on January 24, 2026 (the "**Effective Date**") and shall end upon the earlier of (i) solely with respect to any Facility, Manager's or its affiliate's receipt of a New License applicable to such Facility, (ii) eighteen (18) months from the date hereof, or such longer period as may be determined by the Manager, and (iii) the earlier termination of this Agreement as set forth herein.

V. Rejected Facility: Operator acknowledges and agrees that pursuant to the terms and conditions of the APA, and in connection with the voluntary bankruptcy case by Operator and its affiliates in the United States Bankruptcy Court for the Southern District of Florida – West Palm Beach Division, lead case number 25-19335, Praesum Healthcare Services, LLC, *et al.* (the "**Bankruptcy Case**"), Manager may, at any time prior to Manager's receipt of the New License, elect not to assume any executory contract or unexpired lease associated with a Facility (the "**Facility Rejection**"). Upon the occurrence of a Facility Rejection, Manager shall proceed to wind down the operations of such Facility, using Facility Funds or otherwise at Manager's expense, which shall include taking all actions necessary and required by any governmental authority to surrender the Current License. Manager shall be responsible for all regulatory and other matters associated with the closure of any Rejected Facility, provided that Manager shall not be responsible to satisfy any claims arising prior to the closing under the APA (including, for the avoidance of doubt, any rejection damages claims). Upon the surrender of the Current License, this Agreement shall terminate with respect to the applicable Facility.

VI. Effect of Termination: Upon the termination of this Agreement, no Party shall have any further obligations whatsoever under this Agreement, but Manager shall immediately be entitled to receive payment of all unpaid Management Fees to the date of termination.

VII. Facility Operations:

A. No Guarantee of Profitability: Manager does not guarantee that the Facilities will be profitable, but Manager shall use its commercially reasonable efforts to provide the services contemplated by this Agreement in as cost efficient and profitable a manner as possible.

B. Standard of Performance: In performing its obligations under this Agreement, Manager shall use its commercially reasonable efforts and act in good faith and with professionalism in accordance with acceptable and prevailing standards of health care and the policies adopted by, and resources available to, the Facilities.

C. Force Majeure: No Party will be deemed to be in violation of this Agreement if it is prevented from performing any of its obligations hereunder for any reason beyond its control, including, without limitation, strikes, shortages, war, acts of God, or any statute, regulation or rule of federal, state or local government or agency thereof.

D. Operator Cooperation: The Operating Entities will cooperate with Manager in every reasonable respect to enable the Manager to perform its services hereunder and its efforts to improve the performance of the Facilities' operations. Without limiting the foregoing, the Operating Entities shall keep active during the Term and grant Manager full access to their information and technology systems with respect to the Facilities including, without limitation, their payroll processing, time and attendance, and billing systems.

VIII. Facility Funds:

A. All revenue of the Facilities received on or after the Effective Date shall be deposited in Facility Bank Accounts (collectively, the "**Facility Funds**"). The Operating Entities agree not to withdraw any funds from the Facility Bank Account(s) or take any action to close any such accounts without the prior written consent of Manager. Manager shall be the Party authorized to deposit, withdraw, and pay checks from the Facility Bank Account for purposes related to the Facilities and the operation thereof and to otherwise supervise, oversee, and direct the cash management operations and affairs of the Facilities and their operations subject to the terms and conditions set forth in this Agreement. For the avoidance of doubt, all cash in Facility Bank Accounts that was deposited prior to the Effective Date shall belong to Operator.

B. Manager shall utilize the Facility Funds to pay: (i) the accounts payable and other expenses of the Facilities during the Term that are attributable to the operation of the Facilities on and after the Effective Date, including, without limitation, all expenses incurred by Manager on behalf of the Company in carrying out by the Services set forth in Sections I and II above, and (ii) at the Manager's sole discretion, certain accounts payable and other expenses of the Facilities during the Term that are attributable to the operation of the Facilities prior to the Effective Date. Except as otherwise set forth herein, in the event additional Facility Funds or working capital is required in connection with the operation of the Facilities during the Term,

Manager shall be responsible for funding such amounts to the Facilities. Notwithstanding the foregoing, unless expressly assumed by the Manager, Manager shall not have any responsibility for the funding of the accounts payable and other expenses and liabilities of the Facilities accrued prior to the Effective Date, but may fund such expenses at the Manager's sole discretion.

IX. Management Fee:

A. Management Fee. As compensation for Manager's services under this Agreement, Manager shall be entitled to a management fee (the "**Management Fee**") equal to the Facilities' operating revenues less all operating expenses attributable to the operation of the Facilities during the Term, calculated in accordance with Manager's standard bookkeeping practices; provided that the Management Fee shall not be lower than $0.00.

B. Payment of Fee. The Manager's Management Fee provided for herein shall be paid monthly by Manager to itself out of the Facility Bank Accounts on or before the tenth (10th) day of the month following the month in which such Management Fee accrues.

C. Limitation of Liability. Notwithstanding any other provision of this Agreement, no Party shall be liable to any other Party for any consequential, incidental or special damages of any kind or nature, including, but not limited to, any claim for loss of anticipated profits, on account of or arising out of any breach or alleged breach of any obligations under this Agreement or any matter with respect to which the other Party is entitled to indemnification under this Agreement. Further, no Party shall be liable for any damages to the extent caused by the acts or omissions of any other Party (or its officers, managers, members, employees, agents, affiliates, insurers and assigns). Notwithstanding anything to the contrary contained herein, Manager's liability arising out of, or relating to, this Agreement is limited to the amount of Management Fees actually received by Manager under this Agreement.

X. Assignment: This Agreement shall not be assigned by any Party without the prior written consent of the other Party, which consent shall not be unreasonably withheld; provided, however, that nothing herein shall be construed as precluding the assignment or delegation of duties provided for in Section I(F).

XI. Notices: All notices required or permitted hereunder shall be given in writing by hand delivery, by registered or certified mail, postage prepaid, or by overnight delivery. Notice shall be delivered or mailed to the Parties at the following addresses or at such other places as a Party shall designate in writing.

If to Manager:

The Mandi Group, L.L.C.
10 Teaberry Court
Lakewood, NJ 08701
Attention: Yitzy Weinfeld, Isidore Bleier
Email: yweinfeld@gmail.com; izzytov@gmail.com

With copy to (which shall not constitute notice):

*Execution Copy*

Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Attention: Ibrahim Barakat, Tyler Lane
E-mail: Ibrahim.Barakat@hklaw.com; Tyler.Lane@hklaw.com

If to Operator:

With copy to:
Robert Furr, Chapter 11 Trustee
FurrCohen, PA
2255 Glades Road, Suite 419A
Boca Raton, FL 33431

XII. Relationship of the Parties: The relationship of the Parties shall be that of a principal and independent contractor and all acts performed by Manager during the Term shall be deemed to be performed in its capacity as an independent contractor. Nothing contained in this Agreement is intended to or shall be construed to give rise to or create a partnership or joint venture or lease between the Operating Entities, their successors and assigns on the one hand, and Manager, its successors and assigns on the other hand.

XIII. Entire Agreement: This Agreement, including all exhibits and schedules attached hereto, and any documents executed in connection herewith contain the entire agreement between the Parties for purposes of managing day to day activities of the Facilities and shall be binding upon and inure to the benefit of their successors and assigns, and shall be construed in accordance with the laws of the State of Florida. This Agreement may not be modified or amended except by written instrument signed by both of the Parties.

XIV. Captions: The captions used herein are for convenience of reference only and shall not be construed in any manner to limit or modify any of the terms hereof.

XV. Attorney's Fees: In the event any Party brings an action to enforce this Agreement, the prevailing Party in such action shall be entitled to recover from the other all costs incurred in connection therewith, including reasonable attorney's fees.

XVI. Severability: In the event one or more of the provisions contained in this Agreement is deemed to be invalid, illegal or unenforceable in any respect under applicable law, the validity, legality and enforceability of the remaining provisions hereof shall not in any way be impaired thereby.

XVII. Cumulative; No Waiver: No right or remedy herein conferred upon or reserved to either of the Parties is intended to be exclusive of any other right or remedy, and each and every right and remedy shall be cumulative and in addition to any other right or remedy given hereunder, or now or hereafter legally existing upon the occurrence of a default hereunder. The failure of any

Party to insist at any time upon the strict observance or performance of any of the provisions of this Agreement or to exercise any right or remedy as provided in this Agreement shall not impair any such right or remedy or be construed as a waiver or relinquishment thereof with respect to subsequent defaults. Every right and remedy given by this Agreement to the Parties may be exercised from time to time and as often as may be deemed expedient by the Parties, as the case may be.

XIX. Authorization for Agreement: The execution and performance of this Agreement by the Operating Entities and Manager have been duly authorized by all necessary laws, resolutions or corporate action, and this Agreement constitutes the valid and enforceable obligations of the Operating Entities and Manager in accordance with its terms, except as such enforceability may be limited by creditors rights laws and general principles of equity.

XX. Counterparts: This Agreement may be executed in any number of counterparts, each of which shall be an original, and each such counterpart shall together constitute but one and the same Agreement.

XXI. JURISDICTION; VENUE. THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF FLORIDA SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY JUDICIAL PROCEEDING RELATING TO ANY DISPUTE ARISING OUT OF THE INTERPRETATION, PERFORMANCE OR BREACH OF THIS AGREEMENT. IN THE EVENT THAT THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF FLORIDA DECLINES TO EXERCISE SUCH JURISDICTION, THEN THE STATE COURT AND THE FEDERAL DISTRICT COURT LOCATED IN PALM BEACH COUNTY, STATE OF FLORIDA, SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY JUDICIAL PROCEEDING RELATING TO ANY DISPUTE ARISING OUT OF THE INTERPRETATION, PERFORMANCE OR BREACH OF THIS AGREEMENT. THE PARTIES IRREVOCABLY AND UNCONDITIONALLY CONSENT, AND WAIVE ANY OBJECTION, TO THE LAYING OF VENUE OF ANY SUIT, ACTION OR ANY PROCEEDING IN SUCH COURTS AND IRREVOCABLY WAIVE AND AGREE NOT TO PLEAD OR CLAIM IN ANY SUCH COURTS THAT ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY SUCH COURTS HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. THE PARTIES ALSO CONSENT TO THE PERSONAL JURISDICTION OF SUCH COURTS IN ACTIONS ARISING OUT OF THIS AGREEMENT.

[Signatures on Following Page]

IN WITNESS WHEREOF, the Parties have hereto caused this Agreement to be duly executed, as of the day and year first above written.

**OPERATOR:**

PRAESUM HEALTH, LLC, on behalf of itself and the other Operating Entities,
a Delaware limited liability company

By: ____________________________
Name: Robert C Funn
Its: Trustee

**MANAGER:**

THE MANDI GROUP, LLC,
a _______________ limited liability company

By: ____________________________
Name:
Its:

IN WITNESS WHEREOF, the Parties have hereto caused this Agreement to be duly executed, as of the day and year first above written.

**OPERATOR:**

PRAESUM HEALTH, LLC, on behalf of itself and the other Operating Entities,
a Delaware limited liability company

By: ____________________________
Name:
Title:

**MANAGER:**

THE MANDI GROUP, L.L.C.,
a New Jersey limited liability company

DocuSigned by:
By: ISIDORE BLEIER
583E37DC13DF447...
Name: Isidore Bleier
Title: Authorized Signatory

Exhibit A

Subsidiaries and Facilities

| | **Subsidiary** | **Facility** | **City** | **State** | **License Number** |
|---|---|---|---|---|---|
| 1. | Sunrise Detoxification Center, LLC | Sunrise Detoxification Center | Lake Worth | FL | LIC-1046160, LIC-1046151 |
| 2. | Sunrise Detox II, LLC | Sunrise Detox Stirling Center II | Stirling | NJ | 1000103 |
| 3. | Sunrise Detox III, LLC | Sunrise Detox III | Ft. Lauderdale | FL | LIC-1046054 |
| 4. | Sunrise Detox Toms River LLC | Sunrise Detox - Toms River | Toms River | NJ | 1000086 |
| 5. | Sunrise Detox Alpharetta, LLC | Sunrise Detox Alpharetta | Alpharetta | GA | 060-296-D |
| 6. | Sunrise Detox Cherry Hill, LLC | Sunrise Detox Cherry Hill | Cherry Hill | NJ | 1000129 |
| 7. | Sunrise Detox Orlando, LLC | Sunrise Detox Orlando | Orlando | FL | LIC-1045568, LIC-1045574 |
| 8. | Sunrise Detox Millbury, LLC | Sunrise Detox Millbury | Millbury | MA | 0127 |
| 9. | Counseling Center at Yorktown Heights, LLC | Sunrise Detox Brentwood | Brentwood | NY | 260412266 |
| 10. | Counseling Center at Yorktown Heights, LLC | Counseling Center at Yorktown Heights, LLC | Brentwood | NY | 260611810 |
| 11. | Sunrise Detox Duluth, LLC | Sunrise Detox Duluth | Duluth | GA | DRUG012992 |
| 12. | The Counseling Center at Freehold, LLC | The Counseling Center of Freehold | Freehold | NJ | 2000454, 101080104 |
| 13. | The Counseling Center at Fair Lawn, LLC | Counseling Center at Fairlawn | Fair Lawn | NJ | 985300 |
| 14. | The Counseling Center at Toms River, LLC | Counseling Center at Toms River | Toms River | NJ | 2000528 |

| | | | | | |
|---|---|---|---|---|---|
| 15. | The Counseling Center at Yorktown Heights, LLC | Counseling Center at Yorktown Heights | Yorktown Heights | NY | 260611810 |
| 16. | The Counseling Center at Clark, LLC | The Counseling Center at Clark at Cherry Hill | Clark | NJ | 259870204 |
| 17. | The Counseling Center at Cherry Hill LLC | The Counseling Center at Chery Hill | Cherry Hill | NJ | 2000687 |
| 18. | The Counseling Center at Middlesex LLC | The Counseling Center at Clark at Middlesex | Middlesex | NJ | 2000690, 259870304 |
| 19. | The Counseling Center at West Caldwell | The Counseling Center at West Caldwell | West Caldwell | NJ | 2000696, 259870604 |
| 20. | The Counseling Center at Brunswick (Monmouth) | The Counseling Center at Clark at Monmouth Junction | Monmouth Junction | NJ | 259870404 |
| 21. | The Counseling Center at Roxbury, LLC | The Counseling Center at Clark at Roxbury | Succasunna | NJ | 259870504, 2000707 |
| 22. | The Counseling Center at Millbury LLC | The Counseling Center at Millbury | Millbury | MA | 1114 |
| 23. | The Counseling Center at Robbinsville LLC | The Counseling Center at Clark at Robbinsville | Robbinsville | NJ | 259870704, 2000884 |
| 24. | Affinity Living Operations LLC | Affinity Living Operations | Toms River | NJ | 1507-D101 |
| 25. | Affinity Living, MA | Affinity Living Millbury | Millbury | MA | N/A |
| 26. | Evolve Recovery Center, LLC | Evolve Recovery Center - Toms River | Toms River | NJ | 1000161 |
| 27. | Evolve Recovery Center Millbury, LLC | Evolve Recovery Center at Millbury | Millbury | MA | 1430 |

| | | | | | |
|---|---|---|---|---|---|
| 28. | Beacon Point Recovery Center, LLC | Beacon Point Recovery Center | Philadelphia | PA | 807448 |

Exhibit B
Current Facility Bank Account

[See Attached]

Exhibit B

**Praesum Healthcare Services, LLC, *et al.***

**United States Bankruptcy Court - Southern District of Florida**
**Case No. 25-19335-EPK (Jointly Administered)**
**Schedule of Bank Accounts**

| Bank Name | Last 4 | Account Name | Debtor | Comments |
|---|---|---|---|---|
| Citizens Bank | 8557 | Beacon Point Recovery Center LLC | Beacon Point Recovery Center LLC | |
| Citizens Bank | 8565 | Beacon Point Recovery Center LLC | Beacon Point Recovery Center LLC | |
| City National Bank | 0056 | Beacon Point Recovery Center LLC | Beacon Point Recovery Center LLC | |
| Bank United | 4061 | Evolve Recovery Center at Millbury, LLC | Evolve Recovery Center at Millbury, LLC | |
| City National Bank | 2488 | Evolve Recovery Center at Millbury, LLC, Debtor-In-Possession, Case #25-19335-EPK | Evolve Recovery Center at Millbury, LLC | |
| Bank United | 6845 | Evolve Recovery Center, LLC | Evolve Recovery Center, LLC | |
| City National Bank | 2506 | Evolve Recovery Center, LLC, Debtor-In-Possession, Case #25-19335-EPK | Evolve Recovery Center, LLC | |
| Bank United | 0705 | Praesum Healthcare Services, LLC Operating | Praesum Healthcare Services, LLC | |
| City National Bank | 7540 | Praesum Healthcare Services, LLC CNB Loan Reserve | Praesum Healthcare Services, LLC | |
| City National Bank | 9271 | Praesum Healthcare Services, LLC Payroll Account | Praesum Healthcare Services, LLC | |
| City National Bank | 0206 | Praesum Healthcare Services LLC Debtor-In-Possession, Case #25-19335-EPK | Praesum Healthcare Services, LLC | |
| TD Bank | 1982 | Praesum Healthcare Services, LLC | Praesum Healthcare Services, LLC | |
| Bank Of America | 9213 | Sunrise Detox Alpharetta, LLC | Sunrise Detox Alpharetta, LLC | |
| Bank United | 1744 | Sunrise Detox Alpharetta, LLC | Sunrise Detox Alpharetta, LLC | |
| City National Bank | 1939 | Sunrise Detox Alpharetta, LLC, Debtor-In-Possession, Case #25-19335-EPK | Sunrise Detox Alpharetta, LLC | |
| Bank Of America | 0712 | Sunrise Detox Brentwood, LLC | Sunrise Detox Brentwood, LLC | |
| Bank United | 1795 | Sunrise Detox Brentwood, LLC | Sunrise Detox Brentwood, LLC | |
| City National Bank | 2038 | Sunrise Detox Brentwood, LLC, Debtor-In-Possession, Case #25-19335-EPK | Sunrise Detox Brentwood, LLC | |
| Bank United | 1833 | Sunrise Detox Cherry Hill, LLC | Sunrise Detox Cherry Hill, LLC | |
| City National Bank | 2056 | Sunrise Detox Cherry Hill, LLC, Debtor-In-Possession, Case #25-19335-EPK | Sunrise Detox Cherry Hill, LLC | |
| Bank United | 3144 | Sunrise Detox Duluth, LLC Operating | Sunrise Detox Duluth, LLC | |
| City National Bank | 2083 | Sunrise Detox Duluth, LLC, Debtor-In-Possession, Case #25-19335-EPK | Sunrise Detox Duluth, LLC | |
| Bank United | 1876 | Sunrise Detox II, LLC | Sunrise Detox II, LLC | |
| City National Bank | 9861 | Sunrise Detox II, LLC, Debtor-In-Possession, Case #25-19335-EPK | Sunrise Detox II, LLC | |
| Bank United | 2783 | Sunrise Detox III, LLC | Sunrise Detox III, LLC | |
| City National Bank | 9348 | Sunrise Detox III, LLC, Debtor-In-Possession, Case #25-19335-EPK | Sunrise Detox III, LLC | |
| Bank Of America | 0537 | Sunrise Detox Millbury, LLC | Sunrise Detox Millbury, LLC | |
| Bank United | 1448 | Sunrise Detox Millbury, LLC | Sunrise Detox Millbury, LLC | |
| City National Bank | 2137 | Sunrise Detox Millbury, LLC, Debtor-In-Possession, Case #25-19335-EPK | Sunrise Detox Millbury, LLC | |
| Bank United | 1965 | Sunrise Detox Orlando, LLC | Sunrise Detox Orlando, LLC | |
| City National Bank | 1972 | Sunrise Detox Orlando, LLC, Debtor-In-Possession, Case #25-19335-EPK | Sunrise Detox Orlando, LLC | |
| Bank United | 1981 | Sunrise Detox Toms River, LLC | Sunrise Detox Toms River, LLC | |
| City National Bank | 2209 | Sunrise Detox Toms River, LLC, Debtor-In-Possession, Case #25-19335-EPK | Sunrise Detox Toms River, LLC | |
| Bank United | 2007 | Sunrise Detoxification Center, LLC | Sunrise Detoxification Center, LLC | |
| City National Bank | 2461 | Sunrise Detoxification Center, LLC, Debtor-In-Possession, Case #25-19335-EPK | Sunrise Detoxification Center, LLC | |
| Bank Of America | 5205 | The Counseling Center at Cherry Hill, LLC | The Counseling Center at Cherry Hill, LLC | |
| Bank United | 0869 | The Counseling Center at Cherry Hill, LLC | The Counseling Center at Cherry Hill, LLC | |
| City National Bank | 2765 | The Counseling Center at Cherry Hill, LLC, Debtor-In-Possession, Case #25-19335-EPK | The Counseling Center at Cherry Hill, LLC | |
| Bank Of America | 0767 | The Counseling Center at Clark, LLC | The Counseling Center at Clark, LLC | |
| Bank United | 2058 | The Counseling Center at Clark, LLC | The Counseling Center at Clark, LLC | |
| City National Bank | 2774 | The Counseling Center at Clark, LLC, Debtor-In-Possession, Case #25-19335-EPK | The Counseling Center at Clark, LLC | |
| Bank Of America | 4301 | The Counseling Center at Duluth, LLC | The Counseling Center at Duluth, LLC | |
| Bank United | 2935 | The Counseling Center at Duluth, LLC | The Counseling Center at Duluth, LLC | |
| City National Bank | 2792 | The Counseling Center at Duluth, LLC, Debtor-In-Possession, Case #25-19335-EPK | The Counseling Center at Duluth, LLC | |
| Bank Of America | 7744 | The Counseling Center at Fair Lawn, LLC | The Counseling Center at Fair Lawn, LLC | |
| Bank United | 2759 | The Counseling Center at Fair Lawn, LLC | The Counseling Center at Fair Lawn, LLC | |
| City National Bank | 2801 | The Counseling Center at Fair Lawn, LLC, Debtor-In-Possession, Case #25-19335-EPK | The Counseling Center at Fair Lawn, LLC | |
| Bank Of America | 0223 | The Counseling Center at Freehold, LLC | The Counseling Center at Freehold, LLC | |
| Bank United | 2724 | The Counseling Center at Freehold, LLC | The Counseling Center at Freehold, LLC | |
| City National Bank | 2819 | The Counseling Center at Freehold, LLC, Debtor-In-Possession, Case #25-19335-EPK | The Counseling Center at Freehold, LLC | |
| Bank United | 7274 | The Counseling Center at Middlesex, LLC | The Counseling Center at Middlesex, LLC | |

**Praesum Healthcare Services, LLC, *et al.***

**United States Bankruptcy Court - Southern District of Florida**
**Case No. 25-19335-EPK (Jointly Administered)**
**Schedule of Bank Accounts**

| Bank Name | Last 4 | Account Name | Debtor | Comments |
|---|---|---|---|---|
| City National Bank | 2873 | The Counseling Center at Middlesex, LLC, Debtor-In-Possession, Case #25-19335-EPK | The Counseling Center at Middlesex, LLC | |
| Bank United | 1520 | The Counseling Center at Millbury, LLC | The Counseling Center at Millbury, LLC | |
| Bank United | 3817 | The Counseling Center at Millbury, LLC | The Counseling Center at Millbury, LLC | |
| City National Bank | 2909 | The Counseling Center at Millbury, LLC, Debtor-In-Possession, Case #25-19335-EPK | The Counseling Center at Millbury, LLC | |
| Bank United | 3574 | The Counseling Center at Robbinsville, LLC | The Counseling Center at Robbinsville, LLC | |
| City National Bank | 2927 | The Counseling Center at Robbinsville, LLC, Debtor-In-Possession, Case #25-19335-EPK | The Counseling Center at Robbinsville, LLC | |
| Bank Of America | 7028 | The Counseling Center at Roswell, LLC | The Counseling Center at Roswell, LLC | |
| Bank United | 2943 | The Counseling Center at Roswell, LLC | The Counseling Center at Roswell, LLC | |
| City National Bank | 3017 | The Counseling Center at Roswell, LLC | The Counseling Center at Roswell, LLC | |
| Bank United | 6253 | The Counseling Center at Roxbury, LLC | The Counseling Center at Roxbury, LLC | |
| City National Bank | 3035 | The Counseling Center at Roxbury, LLC, Debtor-In-Possession, Case #25-19335-EPK | The Counseling Center at Roxbury, LLC | |
| Bank Of America | 9916 | The Counseling Center at the Brunswicks, LLC | The Counseling Center at the Brunswicks, LLC | |
| City National Bank | 2747 | The Counseling Center at the Brunswicks, LLC, Debtor-In-Possession, Case #25-19335-EPK | The Counseling Center at the Brunswicks, LLC | |
| Bank United | 2252 | The Counseling Center at Toms River, LLC | The Counseling Center at Toms River, LLC | |
| City National Bank | 3053 | The Counseling Center at Toms River, LLC, Debtor-In-Possession, Case #25-19335-EPK | The Counseling Center at Toms River, LLC | |
| Bank United | 7312 | The Counseling Center at West Caldwell | The Counseling Center at West Caldwell, LLC | |
| City National Bank | 3071 | The Counseling Center at West Caldwell, LLC, Debtor-In-Possession, Case #25-19335-EPK | The Counseling Center at West Caldwell, LLC | |
| Bank Of America | 0509 | The Counseling Center at Yorktown Heights, LLC | The Counseling Center at Yorktown Heights, LLC | |
| Bank United | 2279 | The Counseling Center at Yorktown Heights, LLC | The Counseling Center at Yorktown Heights, LLC | |
| City National Bank | 2720 | The Counseling Center at Yorktown Heights, LLC, Debtor-In-Possession, Case #25-19335-EPK | The Counseling Center at Yorktown Heights, LLC | |